THE STATE OF IOWA v. W. W. AMES, Appellant.

**Embezzlement:** INDICTMENT: INSTRUCTION. An indictment for 1 the embezzlement of funds, under Code section 4842, must charge that the corporation is a building and loan association, and where the state offers the articles of incorporation simply to prove the fact of incorporation, an instruction on the theory that the indictment is founded on section 1918 is error.

**Intent:** INSTRUCTION. An instruction relating to embezzlement 2 which omits the element of fraudulent intent is erroneous.

**Evidence:** INADMISSIBILITY. In a prosecution for embezzlement 3 the entries on a check stub and a cash book are inadmissible against defendant, where there is no evidence that he is responsible for or had knowledge thereof.

*Appeal from Dubuque District Court.*—HON. FRED O'DON-NELL, Judge.

WEDNESDAY, APRIL 8, 1903.

INDICTMENT for embezzlement. Verdict and judgment finding defendant guilty, and he appeals.—*Reversed.*

*Lacy & Brown* and *Matthews & Frantzen* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General for the State.

DEEMER, J.—The indictment charges the defendant with having embezzled the sum of $132 from his principal,

the Iowa Mutual Building & Loan Association, a corporation organized under the laws of the state of Iowa. The charge is that defendant was the manager and agent of said association, that the money received and embezzled by him belonged to his employer, and that he willfully, unlawfully, and feloniously converted the same to his own use, without the consent of his said principal.

There are at least two sections of the Code relating to embezzlement. One of them (section 4842) provides that: "If any officer or agent * * * of any corporation * * * embezzles or fraudulently converts to his own use * * * without the consent of the employer * * * any money or property of another * * * which has come to his possession or under his care in any manner whatsoever, he is guilty of larceny, * * * and he shall be punished accordingly." And the other (section 1918) reads as follows: "If any officer, director or agent of any building and loan or savings and loan association * * * shall embezzle or convert to his own use or shall use or pledge for his own benefit or purpose, any monies, securities, credits or other properties belonging to the association, * * * he shall be fined in any sum not exceeding ten thousand dollars or imprisoned in the penitentiary not exceeding ten years or punished by both fine and imprisonment."

That there is a radical difference between these two sections is apparent from a cursory reading. The indictment in this case was evidently bottomed on section 4842, and not on section 1918, for it does not charge that the corporation was in fact a building and loan association, but does allege a fraudulent conversion from a corporation organized under the general laws of the state. When the state offered the articles of incorporation under which the association was organized, its counsel stated that they were offered simply to prove the fact of incorporation. Notwithstanding this situation, the

1. INDICTMENT: instructions.

court instructed the jury as if the indictment were founded on section 1918, and in the tenth paragraph of its charge said that: "Under the statute it is provided if any officer, director, agent, or employe of any building and loan or savings and loan association shall embezzle, or convert to his own use any money, securities, credits or other property belonging to the association he shall be punished as therein provided." This was manifestly erroneous. Under section 4842 it was necessary for the state to show not only that the building and loan association was a corporation, that defendant was its agent, and received the money of his employer, but that he fraudulently converted the same to his own use without the consent of his employer. Under section 1918 it was incumbent on it to show that the corporation was a building and loan association, that defendant was its agent, and that he embezzled and converted to his own use, or used for his own benefit or purpose, money or other property belonging to the association. As the indictment was under section 4842 defendant could not be convicted under section 1918, for the reason that it is not charged that the corporation was in fact a bui ding and loan association. There is no requirement of statute that the name taken by a corporation shall be indicative of its business; hence the name assumed by the corporation affords no guide as to the nature of its business. In any event, it will not be contended that the indictment may be aided, by intendment from the name selected by the corporation. No doubt defendant could have been indicted under either section. But when attempt is made to charge one under section 1918 it must appear by proper allegation, which must be supported by proof, that the embezzlement was from a building and loan association not only in name, but in fact. Other instructions, based on the same mistaken notion of the character of the charge, were erroneous, and should not have been given. We do not set them out, for to do so would unduly extend this opinion.

II.   In the seventh instruction the court said:   "It is larceny by embezzlement where one who is the agent of another, and has in his possession rightfully the property

2. INTENT: in-stuction.

of such other, appropriates it to his own use, without the consent of such other that he may thus appropriate it."   This was erroneous under either section of the statute, in that it omits the element of fraudulent intent necessary to make out the offense charged in the indictment.   *Stale v. Baldwin*, 70 Iowa, 180; *State v. Wallick*, 87 Iowa, 369.

III.   Defendant was in charge of the Iowa Mutual Building & Loan Association, which association was in process of voluntary liquidation.   J. B. Zigrang, who held a certificate of stock therein, on which he had paid $500, called at the office, and demanded a settlement.   Defendant gave him a check for $500, telling him at the time that his account also showed profits amounting to $132.99, but that he should keep this to meet possible losses. Zigrang, who is a Catholic priest, threatened trouble if the money was not paid him.   After Father Zigrang left the office, Ames concluded it was better to settle with Zigrang, and directed the bookkeeper, a Miss Murray, who had authority to issue checks, to draw a check for $132.99, saying that he would take the cash, and personally see the priest, and try and settle with him.   Miss Murray drew a check, payable to the order of "Cash," signed it in the name of the secretary of the company, and also secured the signature of the president of the corporation thereto.   This check was cashed by Miss Murray, and the money called for therein was delivered to defendant.   At this time the Iowa Mutual Company was being absorbed by the Home Savings & Trust Company, another corporation, located in Des Moines, and the latter concern officed with the Iowa Mutual at Dubuque.   One Spinney was the secretary and manager of the Home Savings Company, and had recently been elected president of the Iowa

Mutual Company. He arrived at Dubuque on the evening of the day Ames received the money on the check hitherto mentioned. Ames explained the matter to Spinney, and Spinney directed him (Ames) not to pay the money to Zigrang. After this matter was thus disposed of, Spinney asked Ames for $150 expense money. Ames replied that he did not know how much there was in the cash drawer, and Spinney then told Ames to give him the money which he had taken for the purpose of settling with Zigrang. Ames then went to the cash drawer, which was used in common by the two companies hitherto mentioned, and made up a package of $150, and gave it to Spinney, at the same time placing a ticket for $17 in the drawer, which, with the cash check, was supposed to represent the $150. The $150 was placed in an envelope, and delivered to Spinney, who took it away with him. Spinney did not take the trip he told Ames he intended to make, but returned to Des Moines, and when he arrived there turned the money he had received from Ames over to the treasurer of the Home Savings & Trust Company, who entered it upon the expense account of that company. On counting the money, it was discovered there were but $140, and the treasurer wrote Ames, mentioning the fact that there was a shortage of $10. This is, in brief, the history of the case.

In order to show embezzlement, the state was permitted, over defendant's objections, to introduce in evidence the stubs of the check book from which the check 3. EVIDENCE: drawn to "Cash" was issued to "J. B. Zig-inadmissi-bility. rang." This entry on the stub book was made by Miss Murray, and there is no evidence that defendant directed the writing of the same, or had any knowledge thereof. It was not in fact true, and, to charge defendant therewith, it should have been shown that he was in some manner responsible therefor. This was not done, and the book was improperly admitted in evidence.

The state also offered in evidence the Iowa Mutual Company's cash disbursement book, the entries on which had been made by Miss Murray, without defendant's knowledge or consent. This book was objected to. It showed a charge of the $132.99 to Father Zigrang's account. Having been made by the bookkeeper without defendant's knowledge or consent, the defendant was not bound thereby, and the book should not have been admitted in evidence. When defendant received the money, he told the bookkeeper he should settle with Zigrang on the best terms he could; would try to get him to take less than the profits shown on the books; and that, if he could not do so, he should pay the full amount. Under this state of facts the book should not have been received in evidence.

Some other rulings are complained of, but, as the matters are not likely to arise on a retrial, we do not consider them.

For the errors pointed out, the judgment must be REVERSED, and the cause REMANDED.