## STATE OF IOWA v. N. A. CARMEAN, Appellant.

**Corporations:** MISAPPLICATION OF FUNDS: CRIMINAL LIABILITY OF
1  OFFICER. An officer of a corporation transacting a lawful business is not guilty of larceny under Code, section 4842, for the act of his subordinates in making a misapplication of funds paid to the corporation by a customer, where the same is not done with his knowledge or under his direction, and from which he receives no personal benefit.

**Misappropriation of funds:** INDICTMENT. To hold an officer of a
2  corporation liable for the fraudulent misappropriation of funds of a customer, entrusted to the corporation, it must be charged in the indictment and shown that the general business of the corporation was illegal, or that the misappropriation in the particular case was with the knowledge or direction of such officer with criminal intent.

**Embezzlement:** CRIMINAL INTENT: EVIDENCE. To charge an officer
3  of a corporation with embezzlement of funds by the corporation on the theory that the course of business adopted by such officer inevitably led to that result, the criminal intent of such officer in the management of the corporate business must be shown, and evidence of the method of discounting notes and the use of accommodation paper, transactions in themselves not unlawful, is inadmissible on the question of criminal intent.

**Same.** On the prosecution of an official for the misappropriation of
4  a particular fund received by the corporation, of which he had no

knowledge, evidence of other like transactions not tending to establish a criminal intent with respect to the specific wrong charged, is inadmissible.

**Criminal intent:** INSTRUCTION. On a prosecution for embezzlement, it was error to charge that criminal intent may be inferred from the inevitable result of the act done, or from the opportunity to ascertain the wrongful act, and the error was not cured by another instruction that to convict there must be proof of the felonious intent to convert the fund.

**Embezzlement:** EVIDENCE. Where an officer is charged with embezzlement effected through the corporation's course of business, the book entries of clerks made without defendant's knowledge, are not admissible to show a misappropriation.

**Embezzlement:** VALUE OF PROPERTY. In a prosecution for embezzlement under Code, section 4842, it is essential to find the value of the property embezzled, the same as in larceny, to determine the punishment.

*Appeal from Marshall District Court.*— HON. G. W. BURNHAM, Judge.

TUESDAY, JANUARY 10, 1905.

DEFENDANT was convicted of embezzlement, and sentenced to imprisonment in the penitentiary for two years at hard labor. From this judgment he appeals.— *Reversed.*

*J. L. Carney,* for appellant.

*Charles W. Mullan,* Attorney-General, and *Lawrence De Graff,* Assistant Attorney-General, for the State.

McCLAIN, J.— Defendant was the president and treasurer of the Rhoades-Carmean Buggy Company, a corporation doing business at Marshalltown, and engaged in the manufacture and sale of carriages and other vehicles. This corporation will be referred to in the opinion as the " company." In November, 1901, the firm of Roemer & Miller, doing business at Hampton, Iowa, entered into a commission contract for the sale of vehicles for the company, and there-

after received consignments for which they executed notes, with the arrangement that such notes should be paid as the carriages were sold, the notes to be extended from time to time until sufficient sales were made to satisfy them, and the time within which each consignment should be sold being limited by the contract.   In December, 1901, Roemer & Miller executed certain notes, five in number, for a consignment of vehicles, which notes were indorsed by the company and transferred to one Meickley.   Subsequently, by remittances, which were to be applied as directed, in part on open account and in part on these notes, two of these notes were taken up, the company giving receipts at the time for the remittances, and subsequently paying off the notes in the hands of Meickley, and returning them to Roemer & Miller.   In June, 1902, Roemer & Miller sent to the company a draft for $925.91, for which they asked credit, on account and notes, for $974.64, the difference between the amount of the draft and the amount of the credit asked being a discount of $48.74, to which they were entitled under their contract, and then directed that, out of the amount sent, $385.50 be applied on the notes given in December, and $585.15 on open account.   This draft came into the hands of the clerks of the company in the transaction of their usual business, and credit was given to Roemer & Miller, as asked, for the amount to be applied on open account; but as the notes were not in the hands of the company, but in the possession of Meickley, they were not immediately taken up, and, in September following, these notes being still unpaid, the company made an assignment, and immediately afterward went into bankruptcy.   The notes in the hands of Meickley were enforced, as against Roemer & Miller, and the defendant is charged with the embezzlement of the sum of $385.50 belonging to Roemer & Miller, which should have been applied to the payment of the notes.

It is not claimed that the money which defendant is charged to have embezzled was intrusted to him personally

by Roemer & Miller, or came into his hands, nor that he had any personal knowledge of its receipt, nor that he made any direction as to its disposition, nor that he derived any personal benefit from its misappropriation.    Indeed, it is fully conceded that, except as defendant may be chargeable with the general conduct of the business of the company, he is in no way liable, civilly or criminally, for the failure to apply this sum of $385.50 to the payment of notes in Meickley's hands.    We come, therefore, directly to the question whether defendant can be held criminally accountable for the failure of the clerks and servants of the company to apply this sum of money in the satisfaction of the notes which it was sent to pay.

The crime of embezzlement is essentially a statutory offense.    The provisions of the section of the Code defining it are as follows:

Sec. 4842.    If any officer, agent, clerk or servant of any corporation or voluntary association, or if any clerk, agent or servant of any private person or co-partnership, except persons under the age of sixteen years, or if any attorney at law, collector or other person who in any manner receives or collects money or other property for the use of and belonging to another, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle or convert to his own use, without the consent of his employer, master or the owner of the money or property collected or received, any money or property of another, or which is partly the property of another and partly the property of such officer, agent, clerk, servant, attorney at law, collector or other person, which has come to his possession or under his care in any manner whatsoever, he is guilty of larceny.    If money or property is so embezzled or converted by a series of acts during the same employment, the total amount of the money and the total value of the property so embezzled or converted shall be considered as embezzled or converted in one act, and he shall be punished accordingly.

Although this section in terms provides that any officer of a corporation receiving or collecting money for the use

of or belonging to another, who embezzles or fraudulently converts it to his own use, is guilty of embezzlement, nevertheless the plain purpose of the statute is to provide, with reference to the officers of corporations, that they shall be criminally liable for the fraudulent conversion of the money or property of the corporation just as agents, clerks, or servants of a private person are liable for a like fraudulent conversion of the money or property of their employers, or as any person who receives money or property for the use of and belonging to another is criminally liable for fraudulent conversion to his own use of money or property thus intrusted to him. The purpose of the statute is to punish those who in a fiduciary relation receive and fraudulently convert money or property intrusted to them, or which comes into their hands by virtue of such relationship. The crime of embezzlement, as generally defined by the statutes, consists essentially of the fraudulent conversion or misappropriation of property received in a fiduciary capacity. *State v. Roubles,* 43 La. Ann. 200 (9 South. 435, 26 Am. St. Rep. 179); *U. S. v. Harper* (C. C.) 33 Fed. 471; *State v. Johnson,* 49 Iowa, 141; *State v. Hengen,* 106 Iowa, 711; *State v. Engle,* 111 Iowa, 246; 2 Bishop, Criminal Law, section 325. To a third person who intrusts his money to a corporation, an officer of the corporation is evidently not liable, civilly or criminally, unless by some act or neglect on his part the money is lost or misappropriated; and in view of the concession that defendant did not, through any personal act of his, misappropriate or cause the misappropriation of the particular sum of money intrusted to the company for the payment of the notes above referred to, we are led to the inquiry, what act or omission of defendant with reference to this money was criminal?

The indictment charges that defendant (not as officer of a corporation, but individually) did unlawfully, etc., steal and take $385.50 of the property of Roemer & Miller, with intent on his part to deprive them of the same, and convert

the same to his own use and the use of the company, without the knowledge or consent of Roemer & Miller; but in describing the method in which the crime was committed, the indictment further recites that defendant was the president and treasurer of the company, and financially interested therein as stockholder, and had charge of its business, with full knowledge of its affairs and system of business, and details the transactions already referred to between the company and Roemer & Miller, and then alleges that the money received by the company was wrongfully and fraudulently, and with intent to convert the same to the use of the corporation and deprive Roemer & Miller thereof, appropriated by defendant to the uses of the corporation, all with the knowledge, consent, and direction of said defendant, and by means of the system of business by him organized. From the allegations thus briefly epitomized it is evident that the intention was to charge defendant with a crime, either by reason of the general supervision which he, as president and treasurer of the corporation, had the power to exercise, and should have exercised, over the conduct of its business, or by reason of his having planned or had knowledge of the course of business, in consequence of which this money was lost to Roemer & Miller. If the first portion of the indictment directly charges personal misconduct of defendant as an individual with reference to money received by him from Roemer & Miller, its allegations in this respect are wholly unsupported by the evidence, and need not be further considered; and it is only those allegations by which it is sought to charge some liability upon defendant by reason of his being an officer in the company, and having general supervision of its business affairs and those relating to its methods of business, which we have occasion now to consider.

We are not referred to any authority for the proposition that the officer of a corporation, no matter how great his responsibility, is criminally liable for the acts of the corporation, performed through other officers or agents, in misap-

propriating money.   It is no doubt true that the corporation 1. MISAPPLICA- would be liable for such misappropriation by TION OF FUNDS: crim- its officers; but there seems to be no reason for inal liability of officer. holding that one officer is to be held criminally accountable for the acts of another officer, nor for the acts of subordinates, unless such acts are by his direct authority and in the execution of a criminal purpose on his part.   The officer cannot be criminally liable for the acts of his subordinates in a greater measure than a principal is criminally liable for the acts of his agents or servants, and it is well settled that a principal is not thus liable for the acts of his agent or servant, even though done in the general course of the employment, unless they are directly authorized or consented to by him; for the authority to do a criminal act will not be presumed.   *State v. Robinson,* 55 Minn. 169 (56 N. W. Rep. 594); *State v. James,* 63 Mo. 570; *Hipp v. State,* 5 Blackf. 149 (33 Am. Dec. 463); *State v. Smith,* 10 R. I. 258; *State v. Hayes,* 67 Iowa, 27; *State v. Eifert,* 102 Iowa, 188.

There is authority for the proposition that where it is made criminal to conduct a business in a particular manner, or where the result of the general method of conducting a business is to create a nuisance, or in similar cases, the principal may be chargeable with the general method of conducting his business, though it is carried on by his agents or servants without his immediate knowledge; but cases of this kind are clearly distinguishable from those in which the offense is in its nature personal, as in the case of larceny, embezzlement, and other crimes involving direct injury to an individual, and in such cases criminal purpose must be alleged.

In order that defendant shall be held liable for so planning and conducting the business of the company as to result in fraudulent misappropriation or conversion of the money of Roemer & Miller intrusted to the corporation, it must, we think, be charged and shown that such course of

business was either in its essential characteristics illegal,
and devised and carried on for the purpose of
effecting a criminal result; or that, with, the
knowledge and under the direction of defend-
ant, it was so carried on in a particular case as to effect such
result. It seems to us that the indictment does not in any
of these respects allege the facts necessary to fix criminal
liability upon the defendant. And the proof is no stronger
than the indictment. There is in this record no evidence
of any intention on the part of defendant that this money
should be misappropriated.

2. MISAPPROPRIA-
   TION OF
   FUNDS: in-
   dictment.

In this connection we may refer to some rulings in the
introduction of evidence of which defendant complains. For
the purpose of showing a course of business carried on under
the general direction of defendant by which
such loss as was occasioned by Roemer & Miller
might naturally result, the prosecution was al-
lowed to introduce much evidence with relation to the method
of discounting notes and the use of accommodation paper.
It seems to us this evidence was inadmissible, for there is
no claim that the transactions themselves thus testified to
were unlawful, nor is there anything in the evidence to
show that the purpose of carrying on the business in this
way was to misappropriate money. The view entertained
by the trial court seems to have been that, if this course
of business was likely to result in some case in the misap-
propriation of money, and did result in this case in such mis-
appropriation, then the defendant must be presumed to have
intended such result; and the jury were instructed, on this
theory, that " the fraudulent conversion of property or money
of another is the voluntary commission of such an act, the
inevitable effect of which is to deprive the true owner of
his property or money, * * * and a criminal intent
may be inferred from the commission of such an act "; and,
further, that, if defendant had knowledge of the fact, or had
the means of knowing, from the manner in which the business

3. EMBEZZLE-
   MENT: crim-
   inal intent;
   evidence.

was done and the books kept by the company, that the
system of business of the company, inaugurated by defendant
and pursued under his direction, would result in the money
of Roemer & Miller not being applied on the notes for the
payment of which it was sent, but in its being turned into
the cash account of the company, and thereby lost to said
Roemer & Miller, defendant would be guilty of the crime
charged. Now, we think that, in the admission of this
evidence and in these instructions, the court committed error.
It cannot be true that the voluntary doing of an act, the
unexpected consequence of which, even though inevitable, is
to deprive the owner of his property, there being no intention
that the act shall have such result, can constitute the crime
of embezzlement; nor that the mere means of knowledge
on the part of the officer of the corporation that its method
of doing business, sanctioned by him, will in a particular
case result in the failure to apply money received to the
proper purpose, in the absence of any intention on his part
that such result shall follow in such case, will constitute
such crime. The difficulty with the whole theory on which
the case was tried is that it sanctions a conviction for a crime
without any evidence either of any criminal act or any
criminal intent on the part of defendant.

As to the evidence received with reference to other
transactions, it is pertinent also to suggest that, even though
they were criminal, they could not be shown in this prose-
cution, unless they tended to establish a crim-
inal intent with reference to the misappropria-

4. SAME.

tion of the money of Roemer & Miller. *State v. Lewis,* 19
Or. 478 (24 Pac. Rep. 914); *Commonwealth v. Shepard,*
1 Allen, 575; *Stanley v. State,* 88 Ala. 154 (7 South. Rep.
273); *Lang v. State,* 97 Ala. 41 (12 South. Rep. 183);
*People v. Cobler,* 108 Cal. 538 (41 Pac. Rep. 401). As it
is conceded that defendant had no knowledge whatever with
reference to the misappropriation of any money of Roemer
& Miller, proof of other transactions of a similar character

could not have had any bearing on the intent of defendant with reference to this particular transaction. The court explained to the jury that the evidence of other transactions and the method of doing business did not alone show any violation of law, and told them that the crime charged must be found, if at all, in the receiving of money by the company, with specific directions to apply upon notes given by patrons of the company, and mingling of such money with the funds of said company; but in this instruction we think the court failed to add to the evidence of a course of business which is conceded to have been legitimate any fact which the jury could find from the evidence tended to show any crime on the part of defendant. The defendant did not receive the money, nor intentionally fail to apply it upon the notes, for he had no knowledge of its receipt.

Perhaps the fundamental difficulty with the theory of the trial court was that he did not consistently bear in mind the general rule that in criminal cases proof of some fact or facts tending to show criminal intent is essential. There is a class of crimes, consisting in the violation of police regulations, in which a criminal intent is said not to be material; but larceny, embezzlement, and other crimes involving willful and fraudulent purpose to injure another are not within this class. *Kletzing v. Armstrong,* 119 Iowa, 505; *State v. Ames,* 119 Iowa, 680; *State v. Culver* (Neb.), 97 N. W. Rep. 1015; *Hamilton v. State,* 46 Neb. 284 (64 N. W. Rep. 965). The cases relied upon by counsel for the State as to this proposition are not in point. They relate to such crimes as the receipt of deposits by a bank officer with the knowledge that the bank is insolvent, and belong to the class of cases as to method of transacting business. The defendant was not charged with any crime of transacting business in an improper manner, but specifically with embezzling the money of Roemer & Miller. The court in one instruction told the jury that felonious intention to convert the money was es-

5. CRIMINAL INTENT: instructions.

sential to constitute the crime; but in other instructions they were told that the criminal intent might be inferred from the inevitable effect of the act done, or from opportunity of knowledge as to the conduct of the business; and these facts were not, in our judgment, even if shown, sufficient of themselves to impute criminal intent to the defendant.

One other matter relating to the introduction of evidence should be noticed. The State was allowed, over defendant's objection, to introduce in evidence entries on the books of the company, made by clerks in the course of their employment, without the direction, and even without the knowledge, of the defendant.

6. EMBEZZLE-
MENT: evi-
dence.

So far as these entries were relied upon as showing the misappropriation of the money with which defendant was charged, they were not admissible. *State v. Ames,* 119 Iowa, 680.

The court did not require the jury to find the amount or value of the money or property embezzled by the defendant, but, on a general verdict of guilty, imposed a sentence which would be justified only if the money or property embezzled exceeded $20 in value.

7. EMBEZZLE-
MENT: value
of property.

The section of the statute already quoted provides that one who embezzles money or property of another, etc., " is guilty of larceny." It is essential, therefore, as in larceny, that the jury find the value of the property stolen; for, without such finding, the court is not possessed of information essential for determining the measure of punishment. *State v. Smith,* 48 Iowa, 595; *State v. Wood,* 46 Iowa, 116; *State v. McCarty,* 73 Iowa, 51. Perhaps the want of a special finding as to the amount of money appropriated would not in this case require a reversal, as there is no conflict in the evidence on the subject; and no doubt the court was justified in assuming that, if there was any embezzlement, it was of the amount of more than $20; but in view of the argument for the State, that no distinction as to degrees or measure of punishment is made in

the provision relating to embezzlement, and that therefore the amount in value of the property embezzled is not to be taken into account in determining the punishment for that crime, we have thought it proper to say that the value of the property embezzled is of the same significance in determining the punishment as the value of the property stolen where the prosecution is for larceny.

For the errors pointed out, the judgment of the trial court is reversed, and the case is remanded for a new trial. — *Reversed.*