Argued November 21; affirmed December 5, 1939; rehearing denied
January 2, 1940

## STATE *v.* GERMAN
(96 P. (2d) 1085)

In Banc.

*Joe Price,* of Portland (John F. Logan, of Portland, on the brief), for appellant.

*Frank S. Sever,* Deputy District Attorney, of Portland (James R. Bain, District Attorney, and Albert M. Hodler, Deputy District Attorney, both of Portland, on the brief), for respondent.

KELLY, J. On the 28th of October, 1919, articles of incorporation duly executed and acknowledged were filed in the office of the corporation commissioner of the state of Oregon, whereby Realtor Investment Co. was incorporated under the general laws of the state of Oregon, with a capital stock of $5,000, consisting of 5,000 shares of the par value of one dollar each.

By supplementary articles of incorporation filed in the office of said corporation commissioner on the

6th day of February, 1926, the name of said corporation was changed to Fred W. German Co.

At all times mentioned herein, defendant, Fred W. German, was the president of said corporation and the owner of 4,998 shares of its capital stock.

On or about February 6, 1932, said corporation negotiated a loan of $600 for Valdemar Flensted and Anna Flensted, his wife. The loan was made to John Danielson and his wife. Mrs. Danielson is now deceased. When the loan was made, Mr. and Mrs. Danielson executed their promissory note dated February 6, 1932, maturing three years after date and bearing interest at the rate of eight per centum per annum payable quarterly. Mr. and Mrs. Flensted were the payees named in said note. At said time, as security for the payment for said note, Mr. and Mrs. Danielson executed a mortgage wherein Mr. and Mrs. Flensted were named as mortgagees, said mortgage being upon certain real property in Lincoln county, Oregon.

The interest upon said note was paid by Mr. Danielson to said corporation, Fred W. German Co., until said note matured. At its maturity, Mr. Flensted asked said corporation to require the mortgagor to pay the principal as well as the accrued interest.

Mr. Danielson thereupon paid $300 to said corporation to apply upon the principal of said note. This payment was made on February 4, 1935, at which time Mr. Danielson also paid $12 interest on said note and the further sum of $16.25 as a fee for an extension loan.

The corporation did not apprise Mr. and Mrs. Flensted of the payment of said $300 by Mr. Danielson; but continued to pay them quarterly the interest upon $600 at the rate of eight per centum per annum.

Sometime near the month of April, 1937, said corporation went into the hands of a receiver. Appealing defendant, Fred W. German, and his son, Frank M. German, were jointly indicted for larceny by embezzlement of said $300 paid by Mr. Danielson.

Appealing defendant contends that there is no substantial testimony in the record tending to show that he knowingly participated in the commission of the crime charged. We think that the record discloses such testimony. On May 5, 1935, Mr. Danielson drew a check payable to said corporation in the sum of $6. Appealing defendant endorsed that check. The jury could have drawn the conclusion therefrom that said defendant knew that Mr. Danielson was not paying the prescribed interest upon $600. On May 15, 1935, appealing defendant signed a check in favor of Valdemar Flensted in the sum of $19.50, bearing the following notation on its face:

```
"Hamblet
    Int.         8.00
 Danielson
    Int.        12.00
                -----
                20.00
 Coll. fee        50
                -----
                19.50"
```

It appears in the record that the corporateion had loaned $400 belonging to Mr. Flensted to another party.

The jury could have concluded from this that appealing defendant was intentionally deceiving Mr. Flensted by leading him to believe that no payment had been made by Mr. Danielson on the principal of his note.

In the record there are four checks, besides the one just mentioned, signed by appealing defendant in the full sum of a quarter's interest at eight per centum per annum upon $600 less a twenty-five cent collection fee made payable to Mr. Flensted. Their respective dates are August 10, 1935; November 12, 1935; February 17, 1936; and May 8, 1936. The check dated May 8, 1936, is in the sum of $21.50 bearing the following endorsement on its face:

| "Potter | 10.00 |
| Danielson | 12.00 |
| | 22.00 |
| Col. fee | 50 |
| | 21.50" |

Appealing defendant and Miss Eunice Parlow endorsed a check drawn by Mr. Danielson in the sum of $6. This check was dated February 4, 1936, and paid on February 7, 1936. The jury would have a right to draw the conclusion from this that appealing defendant knew that Mr. Danielson's quarterly payment was but $6. From the fact that ten days thereafter appealing defendant signed the check in favor of Mr. Flensted for $12, less the collection fee of twenty-five cents, the jury could have concluded that appealing defendant was engaged in deceiving Mr. Flensted by causing him to believe no payment had been made on the principal of the Danielson note.

■ It is argued that appealing defendant automatically signed these checks without knowing about the crime charged. This is permissive argument, but it presents a view with which reasonable minds may differ. At most, the question thus involved was one for the jury.

Defendant contends also that the trial court erred in permitting the introduction of the testimony of Miss Helen Guerrettaz concerning the commission of alleged crimes separate and distinct from the crime charged in the indictment.

The testimony thus challenged identified certain entries in the books of the corporation containing the accounts of loans made for certain of the corporations' customers other than Mr. and Mrs. Flensted, on which the corporation was collecting principal and interest payments for such customers. These entries show that collection on the principal sums were made by the Fred W. German Co. and not remitted to the customers; but in each of those cases, except the one known as the Wild-Dezure loan, the corporation collected interest on the reduced amount of the principal and remitted to the customer the full amount of interest on the original principal sum of the loan. In the Wild-Dezure loan, the entire principal was paid, but the corporation thereafter continued to pay interest to the mortgagee although, of course, the mortgagor paid none.

This evidence comes within the recognized exceptions to the general rule that proof of other and distinct crimes, than the one charged in the indictment, cannot be given in evidence.

■ In the light of the testimony that appealing defendant exercised direct control over all of the affairs of the corporation, from time to time made inquiry as to the condition and details thereof, and had directed that payment of principal collected for customers be not remitted to the customers, except on direction from himself or his son, Frank M. German, the challenged testimony tends to show intent, the absence of mis-

take or accident, and a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others. Under the doctrine of *State v. Gillis*, 154 Or. 232, 59 P. (2d) 679, and cases there cited, such evidence was admissible.

Defendant claims that entries on the books of the corporation were introduced, which entries were made by clerks in the course of their employment without the direction or knowledge of defendant and without proper identification.

We think that there is testimony tending to show such personal supervision over these records by appealing defendant as to render them admissible.

The loans made for customers were negotiated by the loan department of the corporation.

Mrs. Dorothy Lockerbie, nee Houston, testified, among other things, that she was stenographer and bookkeeper for said corporation from the early part of 1928 until January or February, 1934; and that when she first entered its employment, appealing defendant did the loan appraising and conducted the business, that is, overseeing the selling at that time. Also, that occasionally said defendant would show loans. Also that every once in awhile said defendant would ask for statements as to how the loan department was coming along; and monthly statements were prepared by an auditor showing the profit and loss in both departments of said corporation.

Said auditor, Mr. Vranson, testified that he discussed with appealing defendant the drafts made upon the funds of the corporation by defendant, Frank M. German, who was in personal charge of the loan de-

partment; and that he, Vranson, furnished monthly statements to appealing defendant as shown by Mrs. Lockerbie's testimony.

Miss Eunice Partlow testified that she was employed by said corporation from May, 1926, to April, 1937, as stenographer and from June 1, 1936, to April, 1937, as bookkeeper, and also that she was the secretary of the corporation from April, 1930, to April, 1937.

Miss Partlow also testified that appealing defendant was over both departments. These direct questions were propounded to Miss Partlow on cross-examination:

"Q And after you were in both the general and the loan department, did you recognize Frank as the head of the loan department? A. Yes.

Q At that time did Fred exercise any control or direction over the books of the loan department?

A He was over both departments."

Sometime about June 1, 1935, the bank account of said corporation was placed under the name of F. W. German, appealing defendant. Thereafter, that bank account was discontinued and payments were made by the corporation in money only. One such payment to Mrs. Flensted is shown in this record.

With reference to this payment of money, supposed by Mrs. Flensted to represent interest on the Flensted loan, Miss Partlow testified as follows:

"Q But you believe that you actually paid the money to Anna Flensted? A. I think so.

*       *       *       *       *

Q Did Mr. Fred German have knowledge of how this business was handled?

A He knew the bank accounts were closed, he knew it had to be handled some way.

Q Well, did he know where you kept the money?
A Yes.
Q Knew what money was in there?
A Well, he knew the way the business was handled."

We quote from the testimony of Miss Guerrettaz:

"Q Now, after statement of which, back in '34,— of which as a result either Frank's salary was reduced or he was told to draw less money out of the corporation, did you make,—you say you made some further reports for Fred or did I understand you just to make reports in the general course of the business?
A Oh, I made reports on different loans, yes, that Mr. German was interested in.
Q Now, those loans, Miss Guerrettaz, do you recollect the time that the Home Owners Loan,—
A (interrupting) Yes.
Q (continuing) — corporation was, — or company, whatever it is,—was—, —what were they doing, refinancing—refinancing some of the property held by the German company?
A Yes.
Q And there were loans on that place of business, on that,—different individual property? A. Yes.
Q Do you recall whether or not that was not, or in general was the property that Fred was asking you about as to the loans and the status of the loans?
A Yes, it was a great deal of that.
Q And that was all property that was held in the general department, wasn't it?
A No, it wasn't; it was loans on the general books.
Q It was in the general books?
A In the loan department books.
Q. Oh, in the loan department books? A. Yes.
Q Whose property was it?
A It was clients' property.
Q Well, as I understand it, it was property held by the company?
A No, they were collections, the loans were in there on collections."

In *State v. Cooke,* 130 Or. 552, 569, 278 P. 936, it is said:

"Assignments numbered 26 to 30, inclusive, are based on the ruling of the court admitting as evidence the ledger showing the account of prosecuting witness Welch with the defendants. These entries were made under the general supervision of the defendant Cooke and were clearly admissible as admissions against interest. The entries were made in the regular course of business, and there was evidence to show that the defendant Cooke kept himself informed of the general condition of his accounts. What was done in the way of bookkeeping was done by and under his general orders. The entries were properly identified: Or. L. Sec. 727, Subds. 2, 3, 6 and Sec. 707; State v. Burke above. The accounts with Welch were properly admitted."

In *State v. Carmean,* 126 Iowa 291, 296, 102 N. W. 97, 106 Am. St. Rep. 352, cited by defendant, "The state was allowed, over defendant's objection, to introduce in evidence entries on the books of the company, made by clerks in the course of their employment, without the direction, and even without knowledge, of the defendant."

The court held that, so far as these entries were relied upon as showing the misappropriation of the money which defendant was charged, they were not admissible. In support of this doctrine, the court cites *State v. Ames,* 119 Iowa 680, 94 N. W. 231.

In *State v. Carmean,* supra, the defendant was charged with stealing and taking $385.50 of the property of Roemer & Miller with intent on his part to deprive them of the same and convert the same to his own use and the use of the company, without the knowledge or consent of Roemer & Miller; but in describing the method in which the crime was committed, the indictment further recites that the defendant was

the president and treasurer of the company, and financially interested therein as stockholder, and had charge of its business with full knowledge of its affairs and system of business and details the transactions between the company and Roemer & Miller, and then alleges that the money received by the company was wrongfully and fraudulently, and with intent to convert the same to the use of the corporation and deprive Roemer & Miller thereof, appropriated by defendant to the uses of the corporation, all with the knowledge, consent, and direction of said defendant, and by means of the system of business by him organized. The court held the indictment fatally defective and that the proof was no stronger than the indictment. It is true that the court there also held that evidence of other transactions, even if they were criminal, could not be shown unless they tended to establish a criminal intent with reference to the misappropriation charged in the indictment. In that case, it was conceded that the defendant had no knowledge whatever with reference to the misappropriation of any money of Roemer & Miller.

In the case at bar, it is urged by the state that the testimony shows participation by appealing defendant in the embezzlement charged in the indictment.

In *State v. Ames,* supra, the objectionable evidence consisted of the stubs of the check book showing that the check which was drawn to cash was issued to J. B. Zigrang. This entry on the stub book was made to Miss Murray and there was no evidence that defendant directed the writing of the same or had any knowledge thereof. Moreover, the notation thus made on the check stub was untrue. The distinction between the Ames case and the instant case is obvious.

Equally plain is the distinction between the case at bar and *State v. Glaze*, 177 Iowa 457, 470, 159 N. W. 260, cited by defendant. Glaze was an employee of a railroad company. He was charged with embezzling funds of the railroad company. A book of carbon copies, known to the record of that case as exhibit T, contained copies of daily reports made at Osceola for the period between November 5, 1913, and January 29, 1914. In it under the head: "Waybills Held out by Glaze," appeared the names of persons, who, it was claimed, paid freight aggregating $3,783.69. Following this was written: "Show as due on Glaze shortage. A. V. Price, Traveling Auditor." This was not in defendant's writing.

After giving the description of said exhibit T, the Iowa court say:

"The state's witness Price say T is a book of which defendant kept 'the greatest part.' The abstract avers without dispute that T is in the handwriting of different parties, only a part of which entries are made by the defendant. The exhibit was objected to, among other reasons, because it is shown that it contains entries of persons other than Mr. Glaze. The state responds that, if Exhibit T was kept for the purpose of showing the daily business of the company, and its receipts at the local office, and if defendant had control of the book, and it was his business to see that proper entries were made upon the book, and if entries were made from which it could be inferred that he had retained part of the money due the company, the book would be admissible. In Secor v. State, 118 Wis. 621, 95 N. W. 942, the Supreme Court of Wisconsin sustains the position of the state to the extent of holding that, since the defendant was bookkeeper of the company in the Milwaukee office, and charged with general supervision of the books kept in the business at that office, and the books were part of the books for the keeping of which defendant was responsible, it was his duty to

see they were properly kept, and they were admissible in evidence as some evidence, on the theory that he should, in the performance of his duty, have knowledge on whether the books were correctly kept. This, however, finds proven what in this case the state merely asserts. Without reference to the Wisconsin case, following State v. Carmean, 126 Iowa at page 301, 102 N. W. 97, 106 Am. St. Rep. 352, and State v. Ames, 119 Iowa 680, 94 N. W. 231, therein cited, we are constrained to hold that the objection is well taken. We there hold that entries on the books of the company made by clerks in the course of their employment, without the direction or knowledge of the defendant, should not be admitted to show misappropriation of the money with which defendant was charged. True, the defendant does not show that these entries were made without his direction or knowledge, but he was not required to. If the state desired to use this book as an admission against him, it was for it to lay the foundation. The books should not have been permitted to go to the jury in the absence of evidence that it was in the writing of defendant, or that, whatever was there in writing of others was done under the direction of defendant, or that he knew of entries made by such others, and of what they were. If such foundation could be laid only for parts of the book, it should have been received with a caution to the jury in some form to consider no part of it made by others without the knowledge of defendant. This is true of Exhibit G as well, and of Exhibit N." *State v. Glaze,* supra.

■ As shown above, in the instant case, there is testimony upon which the jury could find that appealing defendant had and exercised general supervision of the books containing the entries under discussion; that the same were kept for the purpose of showing the daily business of the corporation and its receipts and disbursements, and that it was his business to see that the books were correctly kept. In other words, in the

Glaze case these facts were merely asserted by the state, while in the case at bar there is evidence tending to prove them. Moreover, in the Glaze case the entry above shown was merely the written conclusion of a traveling auditor of the railroad company over whom manifestly a local cashier would and could have no control.

■■ It is further argued by defendant that error was committed by receiving in evidence state's exhibit 21, being a sheet from the bookkeeping system designated as the Dezure account. There, the account was opened in 1934, and payment made on June 18, 1935. This payment was not transmitted to its rightful owners. The indictment herein was returned on November 22, 1937. While it is true that the date of the commission of the crime is alleged therein to be February 13, 1935, the crime charged is a continuing one and the state could prevail by proving its commission at any time within the period of statutory limitation prior to the return of the indictment. Moreover, this court has approved the reception of evidence of similar offenses committed subsequent to the commission of the crime charged: *State v. McClard*, 81 Or. 510, 160 P. 130.

During the course of the trial, testimony was elicited to the effect that the corporation had received $1,125 from a customer; that the customer thought it was loaned, but it was not; and that the corporation paid the customer interest on it. The trial court promptly struck this testimony from the record and instructed the jury to disregard it. Defendant insists that the action of the trial court in striking the testimony and in instructing the jury to disregard it did not cure the error committed in eliciting the same.

■ We think that the defendant was not prejudiced by the course taken. In this connection, we would call attention again to the fact that the testimony discloses several transactions similar to the one for which defendant was tried, and no charge of bad faith on the part of the state could be made because the Dezure matter was presented. We are not called upon to decide what effect would ensue if evidence of a single offense dissimilar to the one charged were thus presented by those in charge of the prosecutions.

There being no reversible error in the record, the judgment of the circuit court is affirmed.

ROSSMAN and BAILEY, JJ., not sitting.