Argued January 24, affirmed April 17, 1957

# STATE OF OREGON v. WILLIAM CLARENCE SCHLEIGH

310 P. 2d 358

*Charles A. Telfer,* of Grants Pass, argued the cause for appellant. On the brief was William F. Johnson, Grants Pass.

*Max L. McMillin,* of Grants Pass, District Attorney for Josephine County, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

## BRAND, J.

Defendant William Clarence Schleigh was indicted, tried and convicted of the crime of wilfully and maliciously setting a fire contrary to the provisions of ORS 164.050. He now appeals.

This is a case which must be considered in connection with the opinion handed down this day in *State of Oregon v. William Lester Schleigh.* The defendant William Clarence Schleigh is the father of William Lester Schleigh. Both were charged with the crime of wilfully and maliciously setting fire to forest under ORS 164.050. The indictments are identical except that in the indictment against the son he is charged with conspiring with the father, and in the case against the father the charge is that he conspired with the son. Both indictments refer to the same acts at the same time and place. The evidence tending to show the corpus delicti is substantially the same in both cases.

The cases differ in this; in the pending case there is evidence of various statements made by the defendant which did not appear in the trial of his son, and the evidence relative to the confession of the son and his mental condition did not appear in this case. For a narrative of the events leading up to the setting of the fires as told by the witnesses in both cases, we refer to our opinion in the case against the son.

Suffice it to say that there was evidence that the series of fires was set with criminal intent and that defendant William Clarence Schleigh and his son were involved. The fires broke out along the road in the wake of a red GMC pickup truck containing two men as they slowly drove easterly on the Coyote Creek Road. Defendant and his son were in such a truck shortly

after, as they drove back down the same road. Witness Garcia testified as follows:

"Q Now when you saw this red GMC pickup coming back down the Coyote Creek Road after you observed those fires on September 6th, 1955, at that time, Mr. Garcia, did you see who was in the pickup?

"A Yes.

"Q Who was in the pickup?

"A William Clarence Schleigh and William Lester Schleigh.

"Q Did they stop in your presence or talk to you?

"A Yes, they stopped and we spoke.

"Q Was there any conversation between you and William Clarence Schleigh relating to these fires?

"A Yes, I don't remember just whether I said 'Hello Bill', or 'Hi Bill', or something like that. Just out of nowhere he said, 'Are you accusing me of these fires?' and I said, 'No, I'm not accusing anyone,' but I says, 'You might have a lot of talking to do,' and he says, 'Why?' I says, 'Because those fires followed a pickup that answers the description of yours right up this road.' 'Well', he says, 'I've already been accused,' and he says, 'The Sheriff's Posse, the State Fire Patrol and the State Police Patrol can go to Hades,' he said, 'Let them prove it.'

"Q Was that the extent of your conversation at that time?

"A Mr. Schleigh had been drinking. He spoke a little more on such stuff as that, but that was all the interest.

"Q That was the gist of the conversation?

"A Just about, yes."

The testimony of Fire Warden Bert Cook was similar to that which he gave in the case against the son. He added that he got to the fires two or three minutes

after five p. m. on September 6, 1955. Fires were scattered along the Coyote Creek Road for a distance of about a mile-and-a-half. There were fires on both sides of the road. When witness Cook was at the third fire he saw the defendant and his son in a red GMC pickup parked beside the road. We quote:

"Q You stated that you went up to him and asked him if you could talk to him, is that right?

"A Yes.

"Q Then what, if anything, did he say?

"A He immediately asked me if I suspected him of setting those fires, or throwing matches and starting those fires, and he said that a match couldn't start a fire, and he showed me at the time a book of matches he had in his hand, and under the conditions at the time and everything else I asked him if he would give me his name or his license number. He told me that I could get the license number off the front of the truck, and I took the license number and his name from the registration slip of that vehicle at that time."

The witness saw the defendant later the same day at the Laurel Camp Cafe, which is at the junction of Coyote Creek Road and Highway 99. We quote:

"Q Just what was this conversation you had with him at that time?

"A Well, he denied any knowledge of the fires at all. Finally he says, 'Well,' he says, 'all right, I'm under arrest,' and he made it a point to tell other customers coming into the cafe at the time, the few that did come in, that he was under arrest, and he seemed to be under the influence of intoxication or intoxicated at the time. He didn't talk too rational. He made the statement to me that I had the wrong bull by the horns and that he had ways of taking care of game wardens, and this, that and the other thing, which as I stated it wasn't a very rational conversation.

"Q  Did you smell any alcoholic beverages on his breath at that time?

"A  Yes, I did."

Again the witness testified:

"A  Well, he did say that he wasn't answerable to a lot of young punks, that he was telling that to the assistant district warden and the state policeman, and he started to be very obstinate at the time. * * *"

Officer Borgman testified that on the morning of the seventh the defendant stated "that he was quite intoxicated, but he remembered sketches of going up Coyote Creek on the previous evening. He stated that if any fires were set that he was probably responsible and that he was probably the instigator." The officer further testified concerning the defendant:

"* * * He stated that he recalled vaguely going up the creek, Coyote Creek Road, rather, in his car, stated he did not remember setting any fires. This was the conversation in the courthouse, or in the county jail building, rather."

The same witness testified concerning statements made in an office in the courthouse. We quote:

"A  That was the occasion when he told us that he had sketches of memory of driving up Coyote Creek, and if any fires—if any fire was set or any fires set, that he probably was responsible, that he probably was the instigator. He was questioned regarding his relationship with the forest service. There was no distinction made between the federal or the state, and he stated that he felt that they were not fair with their people.

* * * * *

"A  That in questioning why, with the relation to the sale of timber, that the big fellow got everything and the little fellow got nothing. * * *"

"Q Was there any reference made by Mr. Schleigh at that time to the kind of vehicle that he drove up Coyote Creek Road?

"A He was asked what type of vehicle, and he stated it was about a 1947 or 1949 GMC pickup. Asked the color, he stated it was maroon."

Again we quote:

"Q At that time that Mr. Schleigh made these statements, Sergeant Borgman, before he made the statements, I should say, did anyone threaten him or promise him any leniency or reward for making the statements?

"A No sir.

"Q Was that, the matter of any threats or leniency, discussed with him during the making of this statement?

"A Yes, it was.

"Q What, if anything, was said about that?

"A He stated that he had not been threatened in any manner, or promised anything in return for the statements he had given us."

The defendant took the witness stand in his own behalf and testified that he did not have anything to do with the starting of any fires on the Coyote Creek Road. This ended the direct examination. Upon cross examination defendant admitted being on the Coyote Creek Road and saying to the fire warden, " 'You don't think that I set these fires, do you?' " He admitted he had been in possession of matches while on the Coyote Creek Road. In answer to a direct question the defendant did not deny that he told officer Borgman that if there were any fires set along Coyote Creek Road that he was the instigator. He merely claimed that he was "led astray on that question" and that he was grilled for two hours. He admitted that he told the officers, speaking of his son, " 'If he threw a

match it's a cinch I was responsible.' " He offered no explanation for the fires and saw no pickup on the road resembling his. In other respects he corroborated evidence offered by the prosecution.

■ For reasons more fully set forth in our opinion in *State of Oregon v. William Lester Schleigh,* we are firmly of the opinion that there was ample evidence of the corpus delicti which in this case is aided by evidence of damaging admissions made by the defendant. The only additional witnesses called by the defense testified to the alleged good reputation and character of the defendant.

What we have said disposes of the first three assignments of error which were based on the claim that the court erred in failing to grant a nonsuit or directed verdict or a motion for judgment of acquittal.

■ By the fourth and last assignment defendant asserts that the court erred in refusing to instruct the jury to disregard all evidence of other fires except the one on the land of Tim Garcia. Under the circumstances disclosed in this case no error was committed in permitting the jury to know of other fires set by the defendant at approximately the same time and evidencing a single scheme or plan motivated by ill will toward the forest service. *State v. Jensen,* 61 Or Adv Sh 851, 296 P2d 618; *State v. Long,* 195 Or 81, 244 P2d 1033; *State v. Dennis,* 177 Or 73, 159 P2d 838, 161 P2d 670; *State v. German,* 163 Or 342, 96 P2d 1085; *State v. Weitzel,* 157 Or 334, 69 P2d 958; *State v. Gillis,* 154 Or 232, 59 P2d 679; *State v. Burke,* 126 Or 651, 269 P 869, 270 P 756.

Finding no error, the judgment of conviction is affirmed.