Argued October 21, affirmed December 8, 1975, reconsideration
denied January 14, petition for review denied February 18, 1976

STATE OF OREGON, *Respondent, v.* ROBERT
GRAY (No. C 74-10-3300 Cr, CA 4428),
*Appellant.*
543 P2d 316

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellant.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant a p p e a l s from jury conviction and judgment in a prosecution for first degree theft: ORS 164.055(1)(a) and 164.015(1). The material part of the indictment reads:

> "The said defendant, between September 3, 1971 and October 30, 1971 * * * did unlawfully and knowingly commit theft of lawful money of the United States of America, of the total value of more than Two Hundred Dollars, the property of Travelers Insurance Company * * *."

The assignments of error, condensed, are (1) that the indictment and the statutes are too vague to provide defendant with due process, hence, a demurrer to the indictment should have been allowed; (2) that the evidence shows no more than a creditor-debtor relationship between defendant and Travelers Insurance Company and the charge could amount only to common law larceny, hence, motions for acquittal should have been allowed; and (3) that the statute of limitations has run on the alleged theft.

■ (1) With reference to the first assignment of error defendant argues that the definitions of theft

in ORS 164.005 et seq. which form the basis of the indictment are too vague, and that a terse assertion of "theft" in the indictment does not sufficiently inform defendant of the nature of the charge. The argument thus made is substantially that which was made by the defense in *State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973). In that case this court discussed the revision of the theft statutes of the State of Oregon, cited above, and concluded that they are not subject to the charge of vagueness, that they sufficiently describe the crime of theft. We also held that when an indictment charging theft charges the crime in the words of the statute where the crime is fully defined, as was done here, it is sufficient. *See* 13 Or App at 220. The first assignment of error at bar has thus been disposed of contrary to defendant's contentions.

(2) This assignment, *see* supra, essentially raises a question of sufficiency of the evidence to raise a jury question under the applicable statutes. The evidence, considered in the light most favorable to the state in view of the verdict, showed that defendant was an insurance agent for Travelers Insurance Company. As such, he sold workmen's compensation insurance of Travelers to Wagner Mining Company, Inc. The total premium was figured on a scale dependent on Wagner's casualty experience, but a set amount for the insurance was paid quarterly in advance by Wagner to the defendant for transmission to Travelers. At intervals Travelers figured its experience with the insured and if reimbursement was thereby justified the amount thereof was credited against advance premiums due, or transmitted by check to the defendant for payment to Wagner.

■ In September 1971 it was determined by Travelers that Wagner had such a retrospective reimbursement due of $48,273. The advance premium of $30,805

for the ensuing quarter was due at about the same time, so $30,805 from the $48,273 was credited on Travelers' books to Wagner's account. On September 10, 1971 defendant was sent a check payable to him in the amount of $19,100.66. This check had a covering letter which explained what it was for. It was addressed to defendant and to Wagner. George Burns, assistant general manager for Wagner during that entire period of time, testified Wagner never was informed by defendant of this payment. The balance of the retrospective reimbursement owing Wagner after the credit of $30,805 was $17,463.[1] The check for $19,100 with the covering letter included $1,637 which Travelers owed to defendant for commissions which he had earned. Defendant deposited this check in his business account on September 17. At about the same time he received a $28,094 quarterly payment of prospective premium from Wagner. He also kept this in his business account and did not notify Travelers of its receipt. Thus, Travelers had credited Wagner $30,805, which defendant knew and did not tell Wagner about, and defendant had received from Wagner $28,094 for Travelers, which he did not tell Travelers about and which he did not send on to Travelers. Besides, he had in his account $17,463 which Travelers owed and had sent to him to pay over to Wagner and which he did not pay over or impart knowledge of to Wagner.

That these facts were all known to defendant may be inferred from his own testimony.[2] Defendant

---

[1] We are aware that there is a discrepancy of a few dollars between the various figures. This discrepancy is unexplained in the record.

[2] On cross-examination in addition to the testimony quoted in text, infra, defendant testified:

"Q  *  *  *  *  *  *

"Did you feel you could use those funds for your own personal needs?

"A   All of them?  No.

contended that his knowledge of these matters was that he knew there was a debt which he owed on account of these sums of money. However, there was evidence from officials of Travelers that when they confronted defendant with the situation after they learned about it several years later he acknowledged that he knew the money belonged to Travelers but that he had used it for bolstering up a private business of which he was the sole owner. There also was evidence that Travelers later paid Wagner the full $48,273, and that defendant had never paid any of it to either Travelers or Wagner.

A substantial part of the theft statutes pertinent to this testimony is ORS 164.015(1):

"A person commits theft when, with intent to deprive another of property or to appropriate property to himself or to a third person, he:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or"

Referring to this language in *State v. Jim/White,* supra, 13 Or App at 218-19, we said that it describes "theft" by using four words, "Takes, appropriates, obtains or withholds." We said that the criminal act of "theft" defined thereby is "substantial interference with property rights or unauthorized control of property" as described by those four words used in ORS 164.015(1). The facts of the case at bar that the jury could have found which we have related above illustrate that the jury could, based on those facts, find the defendant guilty of violation of the statute.

---

"Q All right. The only ones you felt you could use for your own personal purposes was commissions, is that right?

"A That is correct.

"Q Why were they in the same account as the premiums were? Why were they mixed in with that?

"A Because it was all a part of the income of the business."

Therefore, a jury question was presented and the motions for acquittal were properly denied.

(3) The defendant contends that the statute of limitations applicable, ORS 131.125(2)(a), requires that the prosecution be commenced within three years from the time the crime is committed and he contends that the crime proved by the evidence, if any, must have occurred more than three years prior to the indictment. In instructions the court told the jury that in order to convict it must find

> "* * * that this crime, if any, was committed between September 3, 1971 and October 30, 1971 [the time assigned in the indictment, quoted supra], or within three years prior to the return of this indictment, which was the 25th of October, 1974.
>
> "In other words, the defendant's act which the State claims as the basis for its prosecution, must be proven to have occurred no more than three years before the return date of the indictment, or after October 24, 1971."

The first paragraph of this instruction, if not explained by the second, would be erroneous. However, the second paragraph sufficiently clarifies it.

■ Evidence showed that the payment of the $28,094 from Wagner to defendant for transmission to Travelers was made in October 1971. The check from Travelers for payment of $17,463 to Wagner, dated September 3, 1971, was cashed by defendant on September 17, 1971 and deposited in his bank account. The question for the jury was, fundamentally, whether any amount of these sums over $200 (the minimum for first degree theft, ORS 164.055(1)(a)) was knowingly "obtained," "appropriated," "withheld" or "taken" by the defendant for his own use with the intent to deprive Travelers thereof after October 24. On cross-examination he testified:

> "Q  Now I think we have already established

that the funds in the account you had were mixed funds?

"A Yes.

"Q Various sources. And, of course, you cannot separate them once they have gone into the account, is that correct?

"A That is correct.

"Q I think you paid out, you told us, in October of 1971, some $20,000, is that right?

"A (Pause) Yes.

"Q And —

"A I don't think I worded that to 'October.' I think I said the period of time following the $19,-000 check.

"Q During October it would be about $20,000, isn't that right?

"A I wouldn't have those records before me, so what portion was September and what portion was October, I don't know.

"Q All right. During that time I gather you couldn't say that the $30,000 came from any particular source either, isn't that also correct?

"A That would be true.

"Q Now you also knew, I am sure, that the check for $19,100 included $17,463 for a retrospective adjustment, is that not correct?

"A That is correct.

"Q That, in fact, was written on the face of the check, wasn't it?

"A I don't believe that amount is on it.

"Q But you could tell from looking at the check?

"A Certainly.

"Q   And you knew, I am sure, that this $17,000 wasn't yours, didn't you?

"A   I knew there was a debt resulting from me having received it, yes.

"Q   Now you also knew during this time that the remainder of the money, this $30,000, had been credited to Wagner?

"A   Yes.

"Q   And didn't you also know that Wagner had paid you $30,000 for that premium?

"A   Yes.

"Q   In fact their premium indicates this?

"A   Yes.

"Q   But you didn't remit either $17,000 to Wagner or $30,000, did you?

"A   That is correct.

"Q   Now isn't it also true that during this time of 1970 through 1971, the Wagner Mining Company had been phasing out many of the policies they had with Travelers Insurance Company?

"A   That is correct.

"Q   And isn't it also true that during this time, because of that, you were losing a great deal of commissions you had been having —

"A   That is correct.

"Q   — from these accounts?

"A   Yes.

"Q   And that put you in straits, didn't it?

"A   The income from the agency was not as great, that is correct."

A representative of Travelers testified that, when that company learned of the matter and he questioned

defendant, defendant showed financial statements of his own corporation and said " 'It's obvious where the money has gone.' " The specific time or times that the money went into that corporation are not shown by such testimony, or by other evidence in the record, however.

The evidence we have reviewed above is weak as to when the taking, appropriating, or withholding with intent to deprive occurred. Yet, defendant in his testimony included all of October 1971 in the period of time in which the appropriation of the funds was occurring. From this the jury could have drawn an inference that a substantial part, over $200, of Travelers' $48,273 (or, not less than $45,557) was knowingly appropriated to defendant's own use after October 24, 1971.

In *State v. Krummacher,* 269 Or 125, 140-42, 523 P2d 1009 (1974), the Oregon Supreme Court said:

"* * * At best, the enunciation of any rule concerning what constitutes a reasonable doubt, whether in a circumstantial or direct evidence case, must be in very general terms and is extremely difficult of application.

"* * * * *

"It is our impression that the inferences of guilt that may be drawn, as compared with contrary inferences which are permissible after factual disputes are settled in favor of the State, leave a sufficient preponderance towards guilt to permit a jury to find guilt beyond a reasonable doubt * * *."

The rule is "extremely difficult of application" at bar, but we think there was enough evidence to submit to the jury, and, after verdict against the defendant, to sustain that verdict.

Affirmed.

SCHWAB, C. J., dissenting.

I conclude that defendant's conviction must be reversed because the prosecution was initiated too late under, and therefore is barred by, the relevant statute of limitations.

To come within the three-year time limitation prescribed by ORS 131.125(2)(a) the state had the burden of proving that defendant committed a felony within three years of the date the indictment was returned, October 25, 1974. As summarized by the majority, most of the transactions that are the basis of this prosecution occurred in September 1971. But the majority concludes: "defendant in his testimony included all of October 1971 in the period of time in which the appropriation of the funds was occurring." 75 Adv Sh 4083.

I disagree. It was the district attorney's question, not defendant's answer, that referred imprecisely to all of the month of October. Although defendant at first agreed that he made withdrawals from his business account during October, he quickly added:

"I wouldn't have those records before me, so what portion was September and what portion was October, I don't know."

This is too slender a reed to establish proof of a criminal act after the required date. Here, as in *State v. Bishop*, 16 Or App 310, 317, 518 P2d 177 (1974), one would reasonably expect that precise records would be available to establish the dates of withdrawals from a bank account.

Alternative lines of reasoning to support the majority's result are also unpersuasive. ORS 131.125(3) (a) extends the statute of limitations under certain circumstances "if the offense has as a material element either fraud or the breach of a fiduciary obligation." This formulation may well fit defendant's

*conduct,* but it does not apply to the consolidated offense of theft in the revised criminal code.

In another context this court has stated that "theft is a continuing offense." *State v. Dechand,* 13 Or App 530, 538, 511 P2d 430 (1973). The decision of the Oregon Supreme Court in an embezzlement case, *State v. German,* 163 Or 342, 96 P2d 1085 (1939), can be read as implying that there is no limitations period applicable to a "continuing offense." But I seriously doubt the court intended to so hold in *German,* or that such a holding would be a desirable rule. In any event, that question has not been briefed or argued in this court.

For the foregoing reasons, I respectfully dissent.