DAVID A. BROWN, Appellant and Respondent, v. WALTER E. BEDELL et al., Appellants, and LESTER ALEXANDER et al., Respondents.

(Argued November 21, 1933; decided January 9, 1934.)

*Edmond B. Butler* and *Claude V. Pallister* for Walter E. Bedell, defendant-appellant. The syndicate agreement did not constitute a Massachusetts trust. (*Hawley v. Keeler*, 53 N. Y. 114; *Newton v. Porter*, 69 N. Y. 133; *Farmers Loan & Trust Co. v. Winthrop*, 238 N. Y. 477.)

*David Steckler* and *Edmund B. Hennefeld* for Myer Davidow, defendant-appellant. An association such as at bar is a partnership or joint venture where the power of ultimate control is in the members and the members possessing such power are liable as copartners for the association's debts whether or not they actually exercise their power of control. (*Byrnes v. Chase Nat. Bank,* 225 App. Div. 102; *Simson v. Klipstein,* 262 Fed. Rep. 823; *Neville v. Gifford,* 242 Mass. 124; *Howe v. Chmielinski,* 237 Mass. 532; *Frost v. Thompson,* 219 Mass. 360; *Williams v. Milton,* 215 Mass. 1.) The ultimate control must be held to be in the beneficiaries of an association such as at bar, where they possess the power, whether exercised or not, either to change the personnel of the managers or trustees; or to change the terms of the authority granted to the managers or trustees; or to terminate the trust. (*Hoadley v. County Comrs.,* 105 Mass. 519; *Gleason v. Mc Kay,* 134 Mass. 419; *Whitman v. Porter,* 107 Mass. 522; *Phillips v. Blatchford,* 137 Mass. 510; *Ricker v. American L. & T. Co.,* 140 Mass. 346; *Mayo v. Maritz,* 151 Mass. 481; *Williams v. Boston,* 208 Mass. 497; *Williams v. Milton,* 215 Mass. 1; *Frost v. Thompson,* 219 Mass. 360; *Horgan v. Morgan,* 233 Mass. 381; *Dana v. T. & R. General,* 227 Mass. 562; *Priestley v. T. & R. General,* 230 Mass. 452; *Sleeper v. Park,* 232 Mass. 292; *Howe v. Chmielinski,* 237 Mass. 532; *Neville v. Gifford,* 242 Mass. 124; *Flint v. Codman,* 247 Mass. 463; *Bouchard v. First People's Trust,* 253 Mass. 351; *Jones v. Gould,* 209 N. Y. 419; *Neary v. Gould,* 228 N. Y. 533; *Byrnes v. Chase Nat. Bank,* 225 App. Div. 102; 251 N. Y. 551.) The power of ultimate control of the pool at bar was in the members, and they are liable for the pool debts, if any. (*McCausey v. Burnet,* 50 Fed. Rep. [2d] 491; *Ing. v. Liberty Nat. Bank,* 216 Ky. 467; *Mooney v. Nagel,* 34 Ohio Cir. Ct. Rep. 119; *Heckscher v. Edenborn,* 203 N. Y. 210; *Terwilliger v. Ontario C. & S. R. R. Co.,* 149 N. Y. 86; *Knapp v. Alvord,* 10 Paige Ch. 205; *Horgan v.*

*Morgan,* 233 Mass. 385; *Williams* v. *Milton,* 215 Mass. 1; *Williams* v. *Boston,* 208 Mass. 497; *Culp* v. *Robey,* 294 S. W. Rep. 647.)

*Edmund B. Hennefeld* and *David I. Shapiro* for Louis Eisenberg, defendant-appellant.

*Abraham Benedict* and *Gustavus A. Rogers* for plaintiff-appellant and respondent. The syndicate agreement did not create a Massachusetts trust. It lacks all the elements requisite to such trust. (*Jones* v. *Gould,* 209 N. Y. 419; *Neary* v. *Gould,* 228 N. Y. 533; *Byrnes* v. *Chase Nat. Bank,* 225 App. Div. 102; 251 N. Y. 551; *Gates* v. *Megargel,* 266 Fed. Rep. 811; *Nowland Realty Co.* v. *Commissioner of Internal Revenue,* 47 Fed. Rep. [2d] 1018; *McCausey* v. *Burnet,* 50 Fed. Rep. [2d] 491; *Tyrrell* v. *Washburn,* 6 Allen, 466; *Hoadley* v. *County Commissioners of Essex,* 105 Mass. 519; *Whitman* v. *Porter,* 107 Mass. 522; *Phillips* v. *Blatchford,* 137 Mass. 510; *Ricker* v. *American Loan & Trust Co.,* 140 Mass. 346.) The life of the syndicate was tacitly extended beyond the date of the loan made by the plaintiff. This is demonstrated by undisputed evidence. (*Ballen* v. *Potter,* 251 N. Y. 224; *Foreman* v. *Foreman,* 251 N. Y. 237; *Olney Canning Co.* v. *State,* 230 N. Y. 351; *Murray Co.* v. *Lidgerwood Mfg. Co.,* 241 N. Y. 455; *Bowery Bank* v. *Gerety,* 153 N. Y. 411; *Second Nat. Bank* v. *Weston,* 172 N. Y. 250; *First Nat. Bank* v. *City of Hartford,* 273 U. S. 548; *Adler* v. *Zimmerman,* 233 N. Y. 431; *Mawhinney* v. *Milbrook Woolen Mills,* 231 N. Y. 290; *Drilling* v. *New York Life Ins. Co.,* 234 N. Y. 234; *Young* v. *U. S. Mtge. & Trust Co.,* 214 N. Y. 279; *Corr* v. *Hoffman,* 256 N. Y. 254; *Mason* v. *Partridge,* 4 Hun, 621; 66 N. Y. 633; *Horgan* v. *Morgan,* 233 Mass. 381.) The plaintiff was not charged with knowledge of the terms of the syndicate agreement; but even if otherwise, or if he knew the terms, they were in themselves insufficient to limit the liability of any of the defendants and are ineffective to shield the defendants from such liability. (*Williams* v. *Boston,* 208

Mass. 497; *Williams* v. *Milton*, 215 Mass. 1; *Neville* v. *Gifford*, 242 Mass. 124; *Tradesmen's Bank* v. *Astor*, 11 Wend. 87; *Hawken* v. *Bourne*, 8 Man. & W. 703; *Walburn* v. *Ingleby*, 1 M. & K. 51; *Walden* v. *Sherburne*, 15 Johns. 409; *Skinner* v. *Dayton*, 19 Johns. 513; *Bank of Rochester* v. *Monteath*, 1 Den. 402; *National Union Bank* v. *Landon*, 45 N. Y. 410; *Mason* v. *Partridge*, 66 N. Y. 633; *Woodruff* v. *Germansky*, 233 N. Y. 365; *Jones* v. *Gould*, 209 N. Y. 419.) There is no ground upon which a new trial can be ordered as against the three managers. It was error to strike out the first count as against the defendant Winston. (*Sharp* v. *Hutchinson*, 100 N. Y. 533; *Rochester Ry. Co.* v. *Robinson*, 133 N. Y. 242; *Grossman* v. *Schenker*, 206 N. Y. 466; *California Packing Corp.* v. *Kelly Storage Co.*, 228 N. Y. 49; *Mc Kee* v. *Jessup*, 62 App. Div. 143; *Ranken* v. *Probey*, 131 App. Div. 328.)

*Edward T. McLaughlin* for Lester Alexander et al., defendants-respondents. The syndicate agreement created a common-law or business trust under which the managers became the trustees and the participants became the beneficiaries or *cestuis que trustent*. The managers were principals and the participants were free from any liability for the principals' acts. (*Jones* v. *Gould*, 209 N. Y. 419; *Byrnes* v. *Chase Nat. Bank*, 225 App. Div. 102; 251 N. Y. 551; *Frost* v. *Thompson*, 219 Mass. 360; *Williams* v. *Milton*, 215 Mass. 1; *Mayo* v. *Moritz*, 151 Mass. 481; *Gutelius* v. *Stanbon*, 39 Fed. Rep. [2d] 621; *Hutchison* v. *Birdsong*, 211 App. Div. 316; *Clark* v. *Rumsey*, 59 App. Div. 435; *Darling* v. *Buddy*, 1 S. W. Rep. [2d] 163; *Hamilton* v. *Young*, 116 Kan. 131; *Taylor* v. *Davis*, 110 U. S. 330; *Schumann-Heink* v. *Folsom*, 159 N. E. Rep. 250.) Plaintiff's knowledge of the existence of the syndicate, as disclosed by his own testimony, was sufficient to charge him with the duty of inquiry as to the terms of the agreement and the limitations therein. (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181; *Craighead* v. *Peterson*, 72 N. Y. 279;

*Martin* v. *Farnsworth*, 49 N. Y. 555; *Nixon* v. *Palmer*, 8 N. Y. 398; *Greenwood* v. *Spring*, 54 Barb. 375.)

*Edward D. Bryde* for T. Markoe Robertson, defendant-respondent. The syndicate agreement created a common-law or business trust under which the managers became the trustees and the participants became the beneficiaries or *cestuis que trustent*. The managers were principals and the participants were free from any liability for the principals' acts. (*Jones* v. *Gould*, 209 N. Y. 419; *Byrnes* v. *Chase Nat. Bank*, 225 App. Div. 102; 251 N. Y. 551; *Williams* v. *Milton*, 215 Mass. 1; *Mayo* v. *Moritz*, 151 Mass. 481; *Bouchard* v. *First People's Trust*, 253 Mass. 351; *Gutelius* v. *Stanbon*, 39 Fed. Rep. [2d] 621.) Irrespective of whether the syndicate agreement be deemed a partnership, joint venture, common-law trust or business trust, the plaintiff had knowledge of its terms and was bound by them. These terms stated distinctly the expiration period of the agreement and the limited liability of each participant. (*Porges* v. *United States Mortgage & Trust Co.*, 203 N. Y. 181; *Craighead* v. *Peterson*, 72 N. Y. 279.)

*Melvin Kleeblatt* and *Samuel R. Gerstein* for Ralph M. Simon, defendant-respondent. The agreement constitutes a trust. (*Jones* v. *Gould*, 209 N. Y. 419.)

*George P. Halperin* for Norman K. Winston, defendant-respondent. The first cause of action set forth in the complaint was properly dismissed against Winston. (*Booth* v. *New Process Cork Co.*, 196 App. Div. 376; *Bandler* v. *Globe & Rutgers Fire Ins. Co.*, 205 App. Div. 515; *Goodman Bros.* v. *Ashton*, 211 App. Div. 769; *Almirall & Co.* v. *McClement*, 207 App. Div. 320; *Peerrot* v. *Mt. Morris Bank*, 120 App. Div. 247; *Tate* v. *American Woolen Co.*, 114 App. Div. 106; *Sampson* v. *Grand Rapids School Furniture Co.*, 55 App. Div. 163; *Dukas* v. *Hennessy Realty Co.*, 178 N. Y. Supp. 420; *Mitchell* v. *Dunmore Realty Co.*, 60 Misc. Rep. 563; *Cash* v. *American*

*Specialty Tailoring· Co.*, 157 App. Div. 729; *Melenky* v. *Melen*, 189 App. Div. 342; *Sparks* v. *Ducas*, 123 App. Div. 507; *Babcock* v. *Anson*, 122 App. Div. 73; *American Exchange Nat. Bank* v. *Goubert*, 135 App. Div. 371; *Davis* v. *Wilson*, 150 App. Div. 704.)

POUND, Ch. J.   The action is to recover the balance due on a promissory note or the same balance due for money lent.   It involves the construction of a pooling or syndicate agreement which reads as follows: " The undersigned hereby form a syndicate for the purpose of dealing in the capital stock of the Broadway National Bank & Trust Company of New York.   The syndicate shall be dissolved and terminate sixty days from the date hereof, but it may be terminated in the discretion of the managers prior thereto.   Walter E. Bedell, chairman, Myer Davidow and Louis ·Eisenberg are hereby appointed as managers and they shall have sole management in the conduct of the business and affairs of the syndicate with all usual and customary powers including the right to make or procure loans and to pledge any of said stock and/or the obligations of the participants hereunder; to pay all commissions and expenses of every nature, and for the account of the syndicate, to purchase, sell, sell short, repurchase, resell or hold shares of the capital stock of the Broadway National Bank & Trust Company to such amount, at such prices and in such manner as they may deem advisable, and generally to act in all respects as in their opinion may be to the best interests of the syndicate.   The maximum commitment of the participants herein shall at no time exceed the sum of five thousand ($5,000) dollars.   The managers hereof, as such, shall in no wise be liable for an error of judgment or mistake of law or fact.   Said managers may participate in this syndicate and as such, with respect to their participation, shall enjoy all the rights, benefits and privileges and be subject to all the liabilities, debts and obligations hereby respectively granted' to and imposed upon any other of the

participants. This shall be binding upon the respective participants, their successors, executors, administrators and assigns, but no partnership relation shall arise therefrom. The liability of a participant in this syndicate shall not be increased by default of any other participant, the maximum individual liability being limited to the sum of five thousand ($5,000) dollars. At the termination period hereinbefore mentioned, the managers shall distribute to the participants herein *pro rata*, in the respective proportions which their respective participations bear to the total participations herein, the shares or cash remaining in their hands and the participants shall share *pro rata* in the said shares, in the profits or losses of the syndicate after deducting the expenses incurred by the managers in conducting the transaction and the apportionment and distribution by said managers of the said shares, profits or losses shall be final and conclusive upon the participants. Dated, New York, July 10, 1929."

The signatures and seals of the subscribers then follow, together with the signed acceptance by the managers: " The undersigned hereby accept the office of Managers specified in the instrument herein upon the terms and conditions therein set forth. Dated, July 10th, 1929."

The note reads as follows:

" $25,000.00.                              *September* 17, 1929.

" Sixty days after date we promise to pay to the order of David A. Brown Twenty-five thousand 00 /100 Dollars at Broadway National Bank and Trust Company. Value received.

" No.              Due.

" BROADWAY NATIONAL BANK AND TRUST CO.
SYNDICATE,

" WALTER E. BEDELL, *Chairman*."

The courts below have held that the instrument constitutes a trust agreement, creating what is commonly known as a business or Massachusetts trust; that the

trustees are the owners as well as the managers of the money put into the pool; that the subscribers are mere beneficiaries and that the promissory note for borrowed money, signed by the chairman of the syndicate, created a legal liability against the managers only and not against the subscribers to the agreement.

The exemption of the members of a business trust from personal liability for its debts has been recognized in New York. (*Jones* v. *Gould*, 209 N. Y. 419; *Byrnes* v. *Chase Nat. Bank*, 225 App. Div. 102; affd., 251 N. Y. 551.) The leading Massachusetts case (*Williams* v. *Inhabitants of Milton*, 215 Mass. 1) is cited with approval in *Crehan* v. *Megargel* (234 N. Y. 67, 79) for the proposition that business trusts may be utilized as substitutes for corporations and that such trusts raise an " insurmountable barrier " (Hiscock, Ch. J., in *Crehan* v. *Megargel*, *supra*, p. 79) between the subscribers and the creditors.

The business trust as a device whereby to gain substantially all the advantages of incorporation and to escape the disadvantages of legislative regulation has not gained favor in all jurisdictions. It is, however, sustained by the great weight of authority. (Warren, " Corporate Advantages without Incorporation," p. 383; Stevens, " Limited Liability in Business Trusts," 7 Cornell Law Quarterly, 116; *Darling* v. *Buddy*, 318 Mo. 784; 58 A. L. R. 493.) The true test of such a trust seems to be to determine whether the relation between the parties is that of principal and agent or trustee and beneficiary; whether the subscribers are separated from direct interest ownership and control of the property and affairs of the trust. A trustee is a principal, not an agent in the management of the trust property. (*Taylor* v. *Davis*, 110 U. S. 330, 335.) The trustees should, therefore, be a self-perpetuating body, owning the property of the syndicate, with all powers of control over it. The shareholders should have no rights except to receive dividends and to share in the final distribution when the business is wound up. Full-

paid and non-assessable shares may be issued and sold to those who care to invest therein. The shares thus become an attractive form of investment when investments are eagerly sought by the public. The trust becomes a *quasi* corporation, separate and distinct from its members.

The agreement is one of joint adventure when the subscribers retain some degree of ownership and control over the property which they put into the pool.

A typical investment trust exists where the trustees invest and reinvest the fund paid in to them in payment for shares and pay the income to the certificate holders and at the termination of the trust divide the fund among them, thus giving them a status like that of shareholders in a corporation. (*Williams* v. *Inhabitants of Milton, supra.*)

Although the test is plain, the difference is not always entirely clear between agreements where the subscribers are associated together by the terms of their agreement as principals owning their contributions to the pool or trust, and giving to their agents mere power to act for them, and agreements whereby the property becomes the property of the trustees and the subscribers have no rights except a right to have the property managed for their benefit. (*Williams* v. *Inhabitants of Milton, supra,* p. 8; *Bouchard* v. *First People's Trust,* 253 Mass. 351.)

Whether the syndicate is the one or the other depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals, owners of the sums subscribed, free from the control of the subscribers, a trust is created; but if the trustees are subject to the control of the subscribers as co-owners of a business for profit (Partnership Law, § 10; Cons. Laws, ch. 39), a partnership or joint undertaking exists as to third parties, although otherwise specified as to the subscribers among themselves.

Applying the test to this case, we have the formation

of a syndicate, not in terms the creation of a trust, to deal in the capital stock of the Broadway National Bank and Trust Company of New York, to last for sixty days, unless sooner terminated by the managers. The stock thus acquired was to be transferred to a corporation to be formed. The managers were to have sole management in the conduct of the business and affairs of the syndicate, but there is no transfer of title to the managers. They were instructed, on account of the syndicate, to purchase, sell, sell short, repurchase, resell or hold shares in the capital stock of the bank, the maximum commitment of the subscribers being five thousand dollars. Does this agreement make the managers agents of a mutual pooling arrangement or does it make them trustees properly so called, who own the property of the association and are masters of it? We think the managers were agents of the subscribers and not owners of the amounts subscribed and paid in.

It is observed, *first*, that the agreement on its face provides for managers and not for trustees. This, of course, is not conclusive (*Byrnes* v. *Chase Nat. Bank, supra*), but it is not without significance. The agreement seeks to limit liability to five thousand dollars each, but it provides that, at the termination of the period of its existence, the participants shall share *pro rata* in the profits or losses of the syndicate. What is this but a pooling agreement whereby a fund is intrusted to managers to use for the syndicate purposes as they shall deem to be for the best interests of the syndicate in buying and selling the shares of the bank? The participants put five thousand dollars each into a pool. They also seek to limit their liability among themselves to that amount and to provide that no partnership relation shall arise therefrom. Plaintiff is charged with knowledge of the terms of the agreement and he is bound thereby. (*Craighead* v. *Peterson,* 72 N. Y. 279, 283; *Jones* v. *Gould, supra,* p. 425.)

A partnership is a joint undertaking wherein the partners agree to share in profits and losses. A business trust, like a corporation, has its own profits and losses. The subscribers as such, like stockholders, have none. Yet here the subscribers agree to share personally in the profits and losses of the syndicate. The managers act as agents of the subscribers, subject to an accounting to them.

The court should be solicitous to gather the object and purposes of the parties from the language of their contract rather than from formulas applied to other cases. Such formulas must not mislead us into the belief that the essential thing to be determined is the question of management. It should not be solicitous to give corporate advantages without incorporation (*Eliot* v. *Freeman*, 220 U. S. 178), or to extend the Massachusetts business trust doctrine of exemption from liability beyond properly defined lines. We conclude that the subscribers created a pooling agreement or agency and did not create a *quasi* legal entity, apart from such subscribers, which became an " insurmountable barrier " between them and the creditors of the syndicate. A business trust is something separate and apart from the members who compose it. We find nothing of the kind here.

The law has not crystalized in all matters to be included in making the test of a business trust, but on the essentials we have abundance of authority to sustain our position.

The trial court has found that the lapse of the sixty-day period did not put an end to the business of the pool and also that Bedell was properly intrusted by his co-managers with the whole management and control, but this was only as against the syndicate managers, Davidow and Eisenberg. (*Jones* v. *Gould, supra.*) We think that the evidence justifies these conclusions as against them.

Many of the other legal questions raised were not considered nor decided when the subscribers, other than the

managers, were let out. These questions should be tried out and decided in relation to the individual rights and liabilities of the other defendants severally.

The judgments below should be reversed and a new trial granted, with costs to abide the event, and the order dismissing the first count of the complaint as to defendant Winston reversed with costs.

CRANE, LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.