STATE of Iowa, Appellee,

v.

Allan Clyde WELSH, Appellant.

No. 58655.

Supreme Court of Iowa.

Aug. 30, 1976.

James Campbell, of Peters, Campbell & Pearson, P. C., Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Jr., and Steven K. Sandblom, Asst. Attys. Gen., and Lyle A. Rodenburg, County Atty., for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

A jury found defendant guilty of violating § 710.4, The Code, "embezzlement by bailee". He appeals from a judgment sentencing him to a term not to exceed five years in the men's reformatory at Anamosa. We affirm.

As support for its verdict, the jury could have found the following facts.

Defendant was manager of Sam's Self-Service Restaurant in Council Bluffs, an enterprise owned by McBluffs, Inc. His duties included hiring and firing employees, purchasing food and supplies, limited bookkeeping, and depositing daily receipts.

In the summer of 1974 Donald J. Mangan, a principal in McBluffs, Inc., and Bernard W. Menard, Jr., assistant in charge of bookkeeping and accounting, conferred with defendant and expressed dissatisfaction with his work. In September Mangan told defendant his services would be terminated in 30 days unless his performance improved.

Defendant's duties included making up a daily report, in duplicate, specifying gross receipts and other transactions. He daily telephoned this information, including the amount of the day's bank deposit, to the corporate office in Omaha, where it was recorded on a "spread sheet". The original of the daily report followed by mail deliv-

ery. When the report was received in Omaha it was used to confirm the figures previously furnished by telephone, then destroyed. Copies of the daily reports were retained in the basement office at the restaurant.

The daily report defendant prepared for October 3, 1974 (a Thursday) disclosed gross receipts of $1276.46, cash pay-outs of $1.87, and a "bank deposit" entry of $1274. As the restaurant's closing hour was 11:00 P.M., it was the policy of the company to deposit receipts on the next bank day.

At about 8:30 A.M. on the following day, October 4, defendant called Menard to transmit the October 3 transactions. He told Menard he had arrived early to get the report out, go to the bank, and take a couple of hours off for personal errands. On the same morning defendant told another employee he was going to the bank. The employee believed "he had the sack with him" at that time.

Defendant never returned to work. In the afternoon Menard telephoned a restaurant employee and learned defendant was still absent.

On Saturday, October 6, Mangan and Menard managed the cafe. Mangan called defendant and informed him his employment was terminated because of his absence from work the prior day. The following Monday defendant turned in his keys and negotiated his final vacation pay. At that time it had not been discovered funds were missing.

Shortly after November 1, when Menard reconciled the books and bank statement for October, he discovered the $1274 deposit representing the business done on October 3 had not been deposited in the bank on October 4 or at any other time.

Defendant now asserts trial court erred (1) in overruling his motion to dismiss, made after the close of evidence, on the ground there was insufficient evidence (a) to show he was a "bailee" (§ 710.4, The Code) as opposed to an employee or agent who must be charged under § 710.5, The Code, or (b) to show he appropriated the missing money to his own use, (2) in overruling objections to admission of the daily report copies, spread sheets, and bank statement, and (3) in violating his due process right under the federal constitution by imposing the maximum penalty without a stated explanation or reasons.

## I. *Ruling on motion to dismiss.*

Defendant's "motion to dismiss", made at the close of evidence, is a motion more appropriately directed to the court in a non-jury trial. We will consider it as a motion for directed verdict. See *State v. Jurgenson*, 225 N.W.2d 310, 312 (Iowa 1975); *Henschel v. Hawkeye-Security Insurance Company*, 178 N.W.2d 409, 414 (Iowa 1970); cf. *State v. Deets*, 195 N.W.2d 118, 123–125 (Iowa 1972).

In the first ground of this motion defendant asserted the State failed to prove he was a "bailee", which he argues was essential under the criminal statute specified in the information:

"710.4 *Embezzlement by bailee.* Whoever embezzles or fraudulently converts to his own use, or secretes with intent to embezzle or fraudulently convert to his own use, money, goods, or property delivered to him, or any part thereof, which may be the subject of larceny, shall be guilty of larceny and punished accordingly."

Defendant contends if the State proved any crime it was not a violation of § 710.4, supra, but a violation of § 710.5, The Code, "embezzlement by agents". He quotes from *State v. Folger*, 204 Iowa 1296, 1301, 210 N.W. 580, 582 (1926) that "[n]ot only are the offenses separate and distinct, but evidence which will sustain one would justify, if not require, an acquittal of the other."

It is clear defendant was an employee of McBluffs, Inc. His embezzlement of corporate funds would fall squarely within the proscription of § 710.5. His conviction under § 710.4 (bailee) may be affirmed only if we determine the prosecution, under these circumstances, had a right to elect between § 710.4 and § 710.5.

In this connection, we think defendant's reliance on *State v. Folger*, supra, is misplaced. The court's statement that "evidence which will sustain one [charge under 710.4 or 710.5] would justify, if not require, an acquittal of the other" was dicta. In *Folger* defendant had been acquitted on a § 710.5 (agency) charge because he was not shown to be an agent. He was retried and convicted under § 710.4 (bailee). Upon his appeal following the § 710.4 conviction, this court, rejecting a claim of former jeopardy, found the crimes were "separate and distinct". Of course, this does not mean a person cannot be both a bailee and an agent. It merely means agency must be proven under § 710.5 and bailment must be shown under § 710.4. Only bailment was established in *Folger*, so only § 710.4 was available to the prosecution.

In a later decision this court, applying a broad definition of bailment, held only to the "separate and distinct" concept articulated in *Folger*, stating it was immaterial whether defendant charged as a § 710.4 bailee, was also an agent:

"The appellant also relies upon *State v. Folger*, 204 Iowa 1296, 210 N.W. 580. In said case we clearly pointed out the distinction between the two statutes, one providing the punishment for embezzlement by an agent, where proof of agency is indispensable, and the other providing for punishment for embezzlement by a bailee, where proof of bailment is indispensable. We there held that the offenses are separate and distinct.

" * * * It is not a material inquiry in this case as to whether or not the appellant was the agent of Mrs. Barnett, who owned the notes and who paid the money to the appellant, or was the agent of Mrs. Frawley, who owned the notes and to whom the appellant was in duty bound to pay the money. The simple situation is that the money at no time belonged to the appellant, nor did he have any rights therein. * * * He is charged as being a bailee of the fund and with having converted the same. He is not charged as being an agent who converted money coming into his hands."

—*State v. Cavanaugh,* 214 Iowa 457, 460, 236 N.W. 96, 97 (1931).

If, as our cases indicate, a person prosecuted under § 710.4 is to be termed a "bailee" we must give consideration to the relationship the legislature intended.

■ At the outset we note the word "bailee" does not appear in the text of the statute but only in the headnote. This enactment came into being with the Code of 1897. It was designated as Title XXIV, Ch. 5, § 8, included in one of 26 titles, each prepared and enacted as a separate bill. See Article by A. Loth, "An Outline of Iowa Codes, Compilations and Revisions", 3 I.C.A., p. VII at XIV–XVI. Following long-standing precedent in examining the enrolled bill in the office of the Secretary of State, see *State v. Lynch,* 169 Iowa 148, 151, 151 N.W. 81, 82 (1915); *Duncombe v. Prindle,* 12 Iowa 1, 11 (1861); *Clare v. State,* 5 Iowa 509, 510 (1858), we have confirmed the headnote was not part of the original statute. It cannot, therefore, control its construction. See § 3.3, The Code; *State v. Hollingsworth,* 248 Iowa 763, 769, 81 N.W.2d 27, 31 (1957); *Monona County v. Waples,* 226 Iowa 1281, 1287, 286 N.W. 461, 465 (1939). Thus the headnote word "bailee", supplied by the code editor, lends no support to the contention that the legislature intended all the technical aspects of property law bailment be imposed to constrict the broad statutory language of § 710.4.

In *Cavanaugh,* supra, 214 Iowa at 461, 236 N.W. at 97 we said " * * * under statutes of this character * * * it is unnecessary to prove agency, and * * * a bailee, within the meaning of such a statute, is one who fraudulently converts to his own use, money, goods, or property delivered to him by another party to be held by him and returned to the bailor or delivered to another party."

An employee falls within the *Cavanaugh* definition:

"When an employee receives, for his employer, property which has been handed over by a third person, the employee be-

comes a bailee of the article under broad definitions of bailment because for the moment possession is in the employee while title is in the employer."

R. Perkins on Criminal Law, Ch. 4, § 1 at 243 (2d ed. 1969).

■ That the property is delivered to the servant or agent by a third person and not the owner does not affect the bailee relationship. *State v. Anderson,* 232 S.W.2d 909, 911 (1950); *Smith v. State,* 78 Okla.Cr. 343, 148 P.2d 206, 208 (1944); *People v. Riccardi,* 50 Cal.App. 427, 430, 195 P. 448, 449 (1920); Brown, The Law of Personal Property, § 76, pp. 272–273 (2d ed. 1955).

It is apparent defendant falls within the broad definition of a § 710.4 bailee. He fraudulently converted money delivered to him by another party (the customers) to be held by him and delivered to a third party (the bank). The bailor was McBluffs, Inc., to whom title to the money passed when the sales were made to the customers.

The State produced evidence from which the jury could have found defendant, although an employee of McBluffs, Inc., was also a "bailee" under the broad definition of that word contained in the instructions, to which defendant made no objection.

■ We hold defendant was properly prosecuted under § 710.4 even though the State might have prosecuted him alternatively under § 710.5. Cf. *State v. Carr,* 118 N.J.Law 233, 192 A. 36 (1937); *Commonwealth v. Cygan,* 212 Pa.Super. 384, 243 A.2d 476 (1968).

■ As his second ground for directed verdict defendant urged there was not sufficient evidence to permit the jury to pass on the issue whether he converted the sales receipts to his own use.

Such proof may be made by circumstantial evidence and the State is entitled to all reasonable inferences to be drawn from the factual circumstances shown. *State v. Graham,* 221 N.W.2d 258, 259–260 (Iowa 1974); *State v. Williams,* 179 N.W.2d 756, 760 (Iowa 1970).

■ In our view the evidence in this case, although circumstantial, was sufficient to generate a jury issue. Unlike the situation in *Williams,* supra, this property traces directly into defendant's hands. All of the circumstances taken together, including his contemplated termination from employment and failure to return to the restaurant after leaving with the money bag, raises a reasonable inference he converted the funds to his own use.

Trial court properly overruled the motion for directed verdict.

II. *Ruling on business records.*

Menard identified exhibits 1, 2 and 3 as duplicate copies of the daily reports for October 1, 2, and 3, prepared by defendant in longhand and recovered from a file in the manager's desk in Sam's Self-Service Restaurant. Exhibits 4 and 5 were identified as spread sheets for September and October, 1974, used to chart and analyze basic data from the daily reports. Menard testified the spread sheet entries were made in the regular course of business by a bookkeeper under his direct supervision and occasionally were entered by him. Exhibit 6 was the October bank statement for McBluffs, Inc.

When these exhibits were initially identified and offered, defendant received permission to reserve his objections. Following Menard's cross-examination defendant objected to exhibits 1 through 6 "for the reasons that these documents are books and records of a business corporation and there has not been any sufficient showing to bring them within the admissibility rules of the Iowa law because they are still without sufficient foundation. They are hearsay. They are not binding upon the defendant without that foundation." After ascertaining from the witness these records were regularly kept in the usual and ordinary course of business, trial court overruled the objection.

At close of State's evidence (defendant offered none) defendant moved to strike Menard's testimony and the above exhibits for the reason "that in a criminal trial

* * * under the provisions of Section 622.28, * * * it must be shown that any shopbook records were entered by the defendant himself, and if there is no showing to that effect, that evidence is inadmissible." Defendant cited as authority *State v. Glaze,* 177 Iowa 457, 159 N.W. 260 (1916). This motion was overruled.

On appeal, defendant assigns as error that § 622.28, The Code, requires trial court to make more than a "cursory examination" of business record exhibits offered and "where the record shows that the trial court failed to do so, reversible error occurred." As we interpret defendant's brief, he argues trial court, when overruling his objection, was required by § 622.28, The Code, to articulate foundational fact findings on the record to justify admission of the business records.

■ Disregarding the patent inconsistency between defendant's objections below and the error he asserts here, it is clear exhibits 1, 2 and 3 were properly admitted into evidence. These daily reports were prepared by defendant and could successfully be offered against him as an admission without reliance on § 622.28, The Code. See *State v. Miller,* 204 N.W.2d 834, 840 (Iowa 1973) and *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976) (adopting definition of hearsay in rule 801, Federal Rules of Evidence); Section 801(d)(2), Federal Rules of Evidence ("A statement is not hearsay if * * * the statement is offered against a party and is (A) his own Statement, in either his individual or a representative capacity * * *.")

■ Turning to exhibits 4 and 5, the company's spread sheets, we are satisfied the record made met the admissibility requirements of § 622.28, The Code. See *State v. Fisher,* 178 N.W.2d 380, 382–385 (Iowa 1970); *State v. Anderson,* 159 N.W.2d 809, 814 (Iowa 1968). Examination of the statute and these interpretive opinions confirms there is no requirement the record be in defendant's handwriting.

The 1916 opinion relied on by defendant below, *State v. Glaze,* supra, involved records offered as an *admission* exception to the hearsay rule and emphasized the necessity of a personal involvement or knowledge of the defendant in the preparation or maintenance of the records. *Glaze,* supra, 177 Iowa at 471, 159 N.W. at 266. Of course, *Glaze* antedated adoption of our modern business records act in 1961. Acts 59 G.A., Ch. 288, § 1; *State v. Hall,* 259 Iowa 147, 160–161, 143 N.W.2d 318, 325–326 (1966).

■ Exhibit 6, the bank statement received by McBluffs, Inc., presents a different issue. Menard simply testified this two-page exhibit was a bank statement from Council Bluffs Savings Bank covering the period October 1 to October 31, 1974, received in the company offices "two or three days after the 31st of October." He testified the statement did not show the deposit for October 3rd business which was reflected on the daily report. This was not an instrument prepared by Menard or McBluffs, Inc. See *State v. Jackson,* 210 S.W.2d 537, 542 (Iowa 1973). There was no evidence the bank prepared the statement in the regular course of its business or that the methods and circumstances of its preparation were such as to indicate its trustworthiness. See § 622.28, The Code; *State v. Fisher,* supra, 178 N.W.2d at 382; *State v. Anderson,* supra, 159 N.W.2d at 814. This instrument was not admissible as a business record under § 622.28 if proper objection was raised.

■ Was defendant's § 622.28 objection that the exhibits were "without sufficient foundation" legally adequate? We have held it is ordinarily incumbent upon the objecting party to lodge specific objections to enable trial court to determine the admissibility of the proffered evidence. *State v. Berch,* 222 N.W.2d 741, 745 (Iowa 1974). In *Twin-State Eng. & Chem. Co. v. Iowa State Hwy. Com'n,* 197 N.W.2d 575, 581 (Iowa 1972) we said "[r]eversible error may not be predicated upon a general objection that no proper foundation has been laid for admission of evidence. A party objecting to the offer of evidence for this reason must point out in what particular or particulars

the foundation is deficient so the adversary may have opportunity to remedy the alleged defect, if possible." *See State v. Raue,* 214 N.W.2d 162, 163 (Iowa 1974); 2 Vestal & Willson, Iowa Practice, § 38.04, at 192. Defendant's objection failed to meet this requirement.

These authorities also indirectly and adversely answer the subsumed contention defendant raises here, that trial court, on the record, was required to make affirmative factual findings the foundational evidence satisfied § 622.28. It is not the court's burden to exhaustively review the record in light of the foundational requirements, attempting to ascertain the undisclosed deficiency the objecting party may have in mind. It is the obligation of the objector to indicate with some specificity wherein the evidence fails to fit the foundational matrix prescribed by § 622.28.

■ We hold the § 622.28 language that "the court find" certain foundational facts does not carry with it an obligation to spread those findings of record upon the occasion of every undefined objection the foundation is lacking. See *State v. Anderson,* supra, 159 N.W.2d at 814.

Admission of exhibits 1 through 6 into evidence was not reversible error.

■ III. Finally, defendant asserts as ground for reversal trial court's action in imposing the maximum sentence without a stated explanation or reasons. He contends this violated his due process rights under the United States Constitution, Amendment 5, made applicable to the states by Amendment 14, citing as supporting authority *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and an article by M. Berkowitz, *"The Constitutional Requirement for a Written Statement of Reasons and Facts in Support of the Sentencing Decision: A Due Process Proposal,* 60 Iowa L.Rev. 205 (1974).

We consider this issue although, with respect to State action, due process is safeguarded by the due process clause of Amendment 14 and not Amendment 5 of the United States Constitution. *Betts v.*

*Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595, 1601–1602 (1942); *Jacobs v. Chariton,* 245 Iowa 1378, 1393, 65 N.W.2d 561, 569 (1952).

The record discloses the sentencing court and parties had studied the pre-sentence report, which contained matters favorable to defendant and recommended probation. But the report also disclosed defendant's alleged threats to Sam's Self-Service Restaurant personnel who testified against him, and two previous larceny convictions, one of which occurred subsequent to his arrest on this charge. Defendant did not deny these incidents.

Neither during the sentencing proceedings nor in its extended calendar judgment entry did trial court set out any reasons for selecting the sentence imposed. See A.B.A. Standards, The Administration of Criminal Justice, Appellate Review of Sentences, § 2.3(c), Sentencing Alternatives and Procedures, § 5.6(i), (ii).

At the outset it should be noted defendant does not rely on the usual "abuse of discretion" ground, nor the concept we should adopt the above A.B.A. Standards as a matter of sound policy. The majority of this court continues to reject these grounds, see, e. g., *State v. Smith,* 244 N.W.2d 325, 326 (Iowa 1976); *State v. Peckenschneider,* 236 N.W.2d 344, 346–348 (Iowa 1975), although agreeing an articulation of the rationale undergirding a sentence would assist both trial court and this court on review. *State v. Horton,* 231 N.W.2d 36, 39 (Iowa 1975).

Rather, defendant argues failure to assign reasons is a per se violation of his federal constitution due process rights. This concept was advanced in the special concurrence in *State v. Horton,* supra, 231 N.W.2d at 40–41, as a reason for adopting the standards. However, we do not find an adjudicated appeal in this jurisdiction where it was ever directly raised as an issue.

Defendant's reliance on *Morrissey,* supra, is best understood by study of the cited article in 60 Iowa L.Rev. 205. The *Morris-*

*sey* court found minimum requirements of due process necessitated "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. The identical requirement was imposed in *Wolff v. McDonnell,* 418 U.S. 539, 564–565, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935, 956 (1974) with respect to disciplinary action leading to a prison inmate's loss of good time.

Although in its most recent decisions the United States Supreme Court has refused to accord the *Morrissey* minimal panoply of due process rights to prisoners in other circumstances, see *Meachum v. Fano,* —— U.S ——, 96 S.Ct. 2532, 49 L.Ed.2d —— (44 U.S.Law Week 5053, filed June 25, 1976); *Montanye v. Haymes,* —— U.S. ——, 96 S.Ct. 2543, 49 L.Ed.2d —— (44 U.S.Law Week 5051, filed June 25, 1976), the court did consider it significant, in upholding Florida's statutory death-sentencing procedure, that "[s]ince * * * the trial judge must justify the imposition of death sentence with written findings, meaningful appellate review of each such sentence is made possible * * *." *Proffitt v. Florida,* —— U.S. ——, ——, 96 S.Ct. 2960, 2966, 49 L.Ed.2d ——, —— (44 U.S.Law Week 5256, 5258, filed July 2, 1976).

While the United States Supreme Court has invoked the constitutional due process requirement of stating reasons for actions in administrative proceedings, *Wolff,* supra; *Morrissey,* supra; *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287, 301 (1970) and in juvenile court transfer proceedings, *Kent v. United States,* 383 U.S. 541, 557, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84, 95 (1966), our research is in accord with that of the third circuit court of appeals:

"While there has been spirited debate on the proposition that a judge should enunciate his reasons for imposing sentence in every case, see Frankel, Criminal Sentences (173); ABA Standards Relating to Appellate Review of Sentences § 2.3(c), Approved Draft (1968), no federal court has yet held it to be a constitutional imperative."

*Washington v. Regan,* 510 F.2d 1126, 1129 (3 Cir. 1975).

Confronted with a closely related issue (whether a federal sentencing judge should be required to state reasons for finding a defendant would receive no benefit from treatment under the Federal Youth Corrections Act) the United States Supreme Court refused to address defendant's due process constitutional contention because it was not raised below. *Dorszynski v. United States,* 418 U.S. 424, 431–432, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855, 862, n. 7 (1974).

As indicated in *Washington v. Regan,* supra, the concept of requiring reasoned sentences has fared poorly in federal courts. While articulating forceful public policy reasons for adoption of the rule, the second circuit, following precedent, refused to adopt this concept in an appeal which did not raise the due process issue. *United States v. Brown,* 479 F.2d 1170, 1172–1173 (2 Cir. 1973) ("Such a rule would be 'a powerful safeguard against rash and arbitrary decisions' at this critical stage of the criminal process where the defendant's liberty is at stake"). Two months later, in *United States v. Velazguez,* 482 F.2d 139, 142 (2 Cir. 1973) the court reiterated from *Brown* its "firm belief that a statement of reasons by the sentencing judge would be a most salutary practice" but declined to impose the rule as a constitutional due process requirement.

Based on a careful study of the language in the above decisions we conclude the United States Supreme Court will not, as a due process requirement under the federal constitution, impose on sentencing judges the same obligation to give reasons for their decisions that the court has required of administrative agencies and judges in other specified proceedings, however anomalous the result. So finding, we conclude the alleged error defendant asserts furnishes no ground for reversal.

Defendant has not contended failure to assign reasons for a sentence violates the due process clause of the Iowa Constitution, Art. I, § 9, nor do we here express any opinion on that issue.

Judgment of the district court is affirmed.

AFFIRMED.

MOORE, C. J., and REES and UHLENHOPP, JJ. concur.

LeGRAND, J., concurs specially in the result.